■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NATHANIEL GRANT, Appellant.—Judgment, Supreme Court, New York County, rendered on October 9, 1975, unanimously affirmed. Concur—Silverman, J. P., and Lynch, JJ.; Evans and Capozzoli, JJ., concur in the following memorandum by Capozzoli, J.: When the District Attorney arrived at the station house with the expectation of questioning the defendant he gave him the usual so-called *Miranda* warning. When the defendant was told by this official that he had a right to the presence of a lawyer before answering any question, the defendant immediately requested an attorney. The Assistant District Attorney, as found by the trial court, "properly ceased the interrogation". Following this, Detective Campbell brought the defendant to a different room and engaged him in conversation and, according to his own testimony, this is what occurred: "I asked Mr. Grant why he agreed for the District Attorney to come down, and when he came down he didn't—now he doesn't

want to speak to him, and I also explained to him that we had several witnesses against him, one being his girlfriend. There were two others that were playing cards at the scene, and I explained this to him. At this point he said that he wants to go see the District Attorney, he wants to speak to the District Attorney." In *Miranda v Arizona* (384 US 436) the court said (p 474): "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." I am mindful, of course, that this right can be waived by the individual, provided that it clearly appears that he does so voluntarily. I am disturbed by the evidence on this point. It seems to me that unrecorded private conversations between the police and a defendant who asserted a *Miranda* right, should not be encouraged and, to say the least, is poor policy. This is especially so when a stenographer is present and the police have brought the individual to another room. The case of *Combs v Wingo* (465 F2d 96), presents a situation similar to the one at bar. In the *Combs* case the defendant was under suspicion of murder, was informed of his right to counsel and he requested an attorney. The interrogating officer told the defendant that a ballistics expert had implicated him. After being so advised, the defendant was again told that he was entitled to a lawyer and could remain silent until he got one. This time the defendant agreed to make a statement. When the introduction of the defendant's statement was objected to, the prosecution argued that the statement made to the defendant by the police officer was by way of information to him and not to question him. Nevertheless the court held the purpose of the police officer, in making this statement to the defendant, was not to inform but to question him and ruled that the statement was involuntary and inadmissible. It went on to quote with approval the following language which was used by a Judge in the Kentucky Court of Appeals, who dissented from that court's affirmance of defendant's conviction. *(Combs v Commonwealth [Ky],* 438 SW2d 82, 86). "The purpose of a question is to get an answer. Anything else that has the same purpose falls in the same category and is susceptible of the same abuses *Miranda* seeks to prevent. The only possible object of showing the ballistics report to the appellant in this case was to break him down and elicit a confession from him. The question was implied if not spoken. Everything was there but a question mark. It was a form of question and got the desired result." Despite my belief that this statement of the defendant in the case at bar was improperly admitted, I am nevertheless convinced by the record before this court, beyond a reasonable doubt, that on the basis of the testimony given at the trial by the eyewitnesses to the homicide, just before the defendant pleaded guilty, there was overwhelming proof of the guilt of the defendant and his conviction would have resulted even if the statement in question had been kept out of the case. Hence, the ruling of the trial court was harmless.