THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MIGUEL COLON, Also Known as "MICKEY", Appellant.

Second Department, May 22, 1978

**APPEARANCES OF COUNSEL**

*Miguel Colon,* appellant *pro se,* and *David L. Levinson* for appellant.

*David S. Ritter, District Attorney (Michael Schwartz* of counsel), for respondent.

**OPINION OF THE COURT**

MARGETT, J.

The principal issue in this case is whether a defendant can waive his right to the presence and assistance of counsel and make a statement to the police in the absence of counsel where he has been under indictment for nearly five months.

Defendant was indicted in September, 1975 for crimes arising from alleged sales of heroin to an undercover police officer in Newburgh, New York, in July, 1975. On February 24, 1976 defendant was taken into custody in New York City by two Newburgh police officers. Defendant, who had been in a holding cell at a New York City police precinct, was advised by the Newburgh officers that they had a warrant for his arrest based upon an outstanding indictment and that he would have to return to Newburgh for arraignment. Defendant and his girl friend (who was not in custody) then accompanied the officers to the Newburgh Police Headquarters, where defendant was taken to the Detective Bureau.

Defendant was read the *Miranda* warnings from a card and was also told, by a detective, that he did not have to talk and could have a lawyer present. Defendant was asked if he

understood his rights and "[h]e gestured yes". Defendant was asked if he wanted to talk and he said "yes." Defendant was then handed a card containing the *Miranda* warnings and, at the request of the detective, signed the card. The detective then said: "You know the reason you are here is because we have an outstanding indictment for your arrest, and a warrant for you, and that is why you were brought back to Newburgh."

Defendant allegedly responded that "he knew why he was arrested, because he sold heroin to Louis [Luis Juncosa, the undercover police officer]."*

Prior to his trial defendant moved, *inter alia,* for suppression of any statements alleged to have been made by him. The motion was denied, after a hearing, on the ground that defendant had made a knowing and intelligent waiver of his *"post-indictment* rights to counsel" (emphasis in original). The "ingredients" of this "valid waiver" were the facts that (a) the *Miranda* warnings had been given, (b) the defendant had been told that he was under indictment and was informed of the content of the indictment and (c) the defendant was told that he had been arrested on a warrant and was to be brought before a court for arraignment on the indictment.

Defendant was subsequently convicted, after a jury trial, of two counts of criminal sale of a controlled substance in the third degree. He was sentenced on each of the counts to a minimum term of eight years and four months and a maximum term of life—the sentences to run consecutively. On appeal defendant contends, *inter alia,* that the alleged admission about selling heroin should have been suppressed. We agree with this contention and, accordingly, the judgment should be reversed and a new trial ordered.

■ ■ It is well settled that the Sixth and Fourteenth Amendments of the United States Constitution guarantee to a defendant the right to counsel at any "critical stage of the prosecution" after adversary judicial proceedings have been initiated against him *(Kirby v Illinois,* 406 US 682, 690; *Simmons v United States,* 390 US 377; *United States v Wade,* 388 US 218; *Massiah v United States,* 377 US 201). The right to counsel under the New York State Constitution (art I, § 6) has, in some areas, been interpreted more expansively than the rights guaranteed under the Fifth and Sixth Amendments

---

* These facts are based on Detective Carroll's testimony at the *Huntley* hearing.

of the United States Constitution, as those amendments have been interpreted by the Supreme Court of the United States (see *People v Blake,* 35 NY2d 331, and cases cited therein at pp 335-336). Indeed, it has been held that "after indictment the right of an accused to the assistance of counsel at every stage of the proceeding against him is absolute" *(People v Loiacono,* 40 AD2d 856).

■ It has long been recognized that police interrogation of a person who has been indicted is such a critical stage of the proceedings against him that a failure to guarantee the aid of counsel during such interrogation "might deny a defendant 'effective representation * * * at the only stage when legal aid and advice would help him' " *(Massiah v United States, supra,* p 204, citing Mr. Justice DOUGLAS' concurring opn in *Spano v New York,* 360 US 315, 326; see, also, *McLeod v Ohio,* 381 US 356, revg *State v McLeod,* 1 Ohio St 2d 60). Since the filing of an indictment presumably imports that the People have legally sufficient evidence of the defendant's guilt of the crime charged *(People v Waterman,* 9 NY2d 561, 565), it is manifest that postindictment interrogation is "a form of pretrial discovery" where "the defendant is the all but irrevocable target" *(People v Lopez,* 28 NY2d 23, dissenting opn at pp 28-29, cert den 404 US 840). Thus, "[p]ostindictment questioning without the aid of counsel violates very basic concepts of fairness" *(People v Loiacono,* 40 AD2d 856; *supra;* see, also, *People v Waterman, supra).*

In contrast to these generally accepted principles, the law with respect to when a defendant can waive his right to counsel at a postindictment interrogation has been divergent among jurisdictions and is unsettled in New York. The genesis of the controversy is *Massiah v United States* (377 US 201, 206, *supra),* where it was held that the defendant was denied his right to counsel "when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted *and in the absence of his counsel"* (emphasis supplied). A number of jurisdictions have construed this language broadly and literally, and have held inadmissible all postindictment statements obtained when counsel was not present (see *United States ex rel. O'Connor v State of New Jersey,* 405 F2d 632, cert den *sub nom. Yeager v O'Connor,* 395 US 923; *Hancock v White,* 378 F2d 479; *United States ex rel. Lopez v Zelker,* 344 F Supp 1050, affd 465 F2d 1405, cert den 409 US

1049; *State v Green,* 46 NJ 192; but cf. *United States ex rel. Wooden v Vincent,* 391 F Supp 1260). Other jurisdictions have adopted "a more restrictive view of *Massiah,* allowing the admission of post-indictment statements voluntarily and deliberately made by a properly warned defendant who was not tricked into speaking by some deliberate act of the investigating officers" *(United States v De Loy,* 421 F2d 900, 902; see, also, *United States v Tucker,* 435 F2d 1017; *Cephus v United States,* 122 US App DC 187, 352 F2d 663; *Commonwealth v Frongillo,* 359 Mass 132).

New York had apparently been one of the jurisdictions "classified" in the latter category by reason of *People v Lopez* (28 NY2d 23, *supra* [see *Blizzard v State,* 30 Md App 156, 163, n 7]). In *Lopez,* the defendant was arrested by Federal officers and interrogated *after* he had been indicted in New York County for murder. Prior to the commencement of questioning, he was advised of his right to counsel, his right to remain silent and that any statements made could be used against him. He signed a written waiver of those rights and made a statement to the officers concerning the crime. In affirming defendant's conviction, the Court of Appeals held that defendant had validly waived his rights even though counsel was not present at the time of the waiver.

A powerful dissent by Judge (now Chief Judge) BREITEL charged the majority with "backtrack[ing]" from the principle, developed in a progression of cases, many of which antedated parallel decisions of the Supreme Court of the United States, "that a defendant in a pending criminal action is entitled to the advice of a lawyer and that the right may not be waived except in the presence and with the acquiescence of counsel" (28 NY2d, at p 26). Judge BREITEL continued (p 29): "Putting aside jurisprudential principles, the practical effect is unfortunate. It seems elementary that in the protection of individuals (even in civil matters, let alone in criminal matters) waivers obtained in a pending action in the absence of counsel are, in truth, a denial of the right to counsel in that action. The denial is the more egregious where counsel is already retained or assigned, but the frustration of the right may be as grave if the waiver comes on the very eve of the inevitable retainer or assignment of counsel as is now the case in criminal actions. Lip service is paid to the right, to be sure, and counsel will be provided, but not until persons, already defendants in criminal actions, have first confessed under the most transparently

manipulated 'voluntary' waivers of 'known rights.' Surely, if Mr. Justice JACKSON was right that no lawyer worth his salt would advise a suspect to talk without counsel present *[Watts v Indiana,* 338 US 49, 59], no lawyer would permit his client in a criminal action to confess in the lawyer's absence."

 *Lopez* was overruled in 1976 by *People v Hobson* (39 NY2d 479). The court in *Hobson* held that *Lopez* (as well as two other cases, *People v Robles,* 27 NY2d 155, cert den 401 US 945, and *People v Wooden,* 31 NY2d 753), had (p 485) "departed from the evident rule" that (p 483) " '[o]nce an attorney enters the proceeding, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant's right to counsel' ". Although *Hobson* involved a situation where counsel for the defendant had already been appointed—thereby apparently prompting Judge GABRIELLI to write a concurring opinion in which he disagreed that *Lopez* should be overruled—it would seem that the majority in *Hobson* believed that the commencement of adversary judicial proceedings through the filing of an indictment is the functional equivalent of the "entry" of a lawyer into the proceedings. That being the case, it is apparent that there can be no postindictment waiver of the right to counsel unless counsel is present (see *People v Townes,* 41 NY2d 97, 102-103; see, also, *People v Cranmer,* 55 AD2d 786).

 *Hobson* recognizes three exceptions to the general rule (39 NY2d, at p 483). (1) "[T]he fact that a defendant is represented by counsel in a proceeding unrelated to the charges under investigation is not sufficient to invoke the rule [citations omitted]." (2) "The rule applies only to a defendant who is in custody; it does not apply to noncustodial interrogation [citations omitted]." (3) A defendant's "spontaneously volunteered statement" is not rendered inadmissible even if counsel is not present. None of these exceptions apply at bar.

The People argue that defendant made a "spontaneous admission" during the course of inquiries "relating to a matter different from that for which he was indicted". In this regard the People point to testimony by the detectives at the *Huntley* hearing, to the effect that they were questioning defendant in reference to information that they had about a "contract" on defendant's life. The detective wanted to know if defendant knew anything about such a "contract" and they were concerned about his safety in the Orange County jail.

Thus, the People claim that defendant's admission comes under the first and third exceptions set forth in *Hobson.*

 That theory does not comport with the facts. Defendant's alleged admission was made after he had been in custody for more than one hour during the ride from New York City to Newburgh, and after the groundwork for interrogation had been laid by the administration of the *Miranda* warnings and the receipt of defendant's signature on a card containing those warnings (cf. *People v Kaye,* 25 NY2d 139, where the admission was made almost immediately after defendant was placed in a police car and before any questions were asked). Even assuming that the warnings were given out of an overabundance of caution, the People's claim is belied by the very language to which defendant responded. Contrary to the finding of the County Court, there was no evidence at the *Huntley* hearing that defendant was in fact told the content of the indictment. Thus, the detective's initial statement upon completion of the preliminaries—"You know the reason you are here is because we have an outstanding indictment for your arrest"—was calculated to get a response as to why defendant thought he was there. (See *People v Grant,* 59 AD2d 661 [concurring opn]; *Combs v Wingo,* 465 F2d 96.) Defendant's predictable response can hardly be termed a "spontaneously volunteered statement".

As for the contention that the police simply wanted to discuss an unrelated matter, that contention must also fail under the facts of this case. In addition to the giving of the warnings and the detective's initial statement, it is clear that the "unrelated matter" was not discussed until *after* the alleged admission had been made.

The case against defendant was a close one and, although we cannot agree with defendant's contention that his guilt was not established beyond a reasonable doubt, the error of allowing testimony about his alleged admission cannot be considered harmless (see *People v Almestica,* 42 NY2d 222; *People v Crimmins,* 36 NY2d 230).

Accordingly, the judgment appealed from should be reversed, defendant's motion to suppress the alleged admission granted, and a new trial ordered.

COHALAN, J. (dissenting). I dissent and would affirm the judgment of conviction.

As I view it, defendant's remark in response to that of the

detective's was a "spontaneously volunteered statement" within the third exception postulated in *People v Hobson* (39 NY2d 479, 483). (See, also, *People v Buxton,* 44 NY2d 33.)

Assuming, *arguendo,* that Colon was answering a question put to him by the detective, his proper answer would have been "yes". Anything beyond that simple affirmation was spontaneous and voluntary. Curiously enough, also, the excerpt from the transcript quoted in the majority opinion, does not indicate the detective's utterance to have been a question; there is no question mark at the conclusion of the statement.

I would affirm.

SHAPIRO, J. P., and O'CONNOR, J., concur with MARGETT, J.; COHALAN, J., dissents and votes to affirm the judgment, with an opinion.

Judgment of the County Court, Orange County, rendered September 17, 1976, reversed, on the law, motion to suppress statements granted, and new trial ordered.