■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ISAAC CLEVELAND STROUD, Appellant.—Appeal by defendant from a judgment of the County Court, Orange County, rendered March 7, 1977, convicting him of attempted criminal possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress an alleged admission. Judgment reversed, on the law and the facts, motion to suppress the alleged admission granted, and case remanded to the County Court for further proceedings in accordance herewith. Upon the remand defendant may, if he be so advised, renew his motion to suppress physical evidence. Defendant was indicted for criminal possession of a weapon in the third degree and menacing. He was arraigned on September 2, 1976. Defendant thereafter made an omnibus motion seeking, inter alia, (a) suppression of alleged confessions and/or admissions, or a hearing with respect to such admissions, and (b) suppression of physical evidence taken from his car, or a hearing with respect to such physical evidence. Insofar as is relevant for the purposes of this appeal, the County Court, in an order dated September 22, 1976, (a) directed that a Huntley hearing be held and (b) denied the branch of the motion which sought to suppress physical evidence "upon review of the search warrant and supporting papers". At the Huntley hearing, the sole witness was Investigator Michael Glick of the New York State Police. He recounted that on June 25, 1976, Sergeant Vander Goot of the Village of Goshen Police Department contacted him and requested assistance in locating defendant. Defendant was wanted because of an incident on a street in Goshen; he had allegedly had a fight with one Jeffrey Cook, had gone "back to his vehicle and obtained a chrome or silverplated pistol from the vehicle" and had threatened Cook with the pistol. Vander Goot supplied Glick with a copy of a warrant for defendant's arrest. Defendant was arrested and brought to the Middletown Barracks, where he was turned over to Investigator Glick. Defendant's car was impounded. Glick read the Miranda warnings to defendant, from a card, and asked defendant if he wanted an attorney. Defendant replied that he did. Glick then left defendant, who was in handcuffs, to search for a telephone. Glick testified that he was going to call the Legal Aid Society. However, the telephones were "tied up" and Glick returned to the room where defendant was being held in less than a minute. On direct, Glick recounted the following sequence of events: "I returned and advised him that the phones were tied up and that I was going to obtain a search warrant for his vehicle on the grounds that the gun was produced from the vehicle as far as my information went, and I didn't like people with guns because guns kill people, especially police officers." On cross-examination Glick gave substantially the same account, except that upon being questioned by the court he stated that he told defendant that he was going to "attempt" to get a search warrant and that he "was going to make sure that [he] got the gun off the street." (On further cross-examination, and on redirect examination, it was brought out that Glick made these remarks to defendant during the course of questioning in regard to defendant's pedigree.) Defendant responded that "he didn't want to see any policemen get killed" and that "there was a gun in the trunk of his vehicle." This alleged admission was made "No more than five minutes" after Glick's remarks; Glick had asked some questions for the arrest report in the meantime. Within 15 minutes after the admission was made, Glick had included it in an application for a search warrant. On cross-examination

Glick admitted that he never tried to get an attorney for defendant after the admission was made—"it was not pertinent that he have an attorney at that point." Based upon that evidence, the motion to suppress the alleged admission was denied. In its decision the County Court concluded that Investigator Glick had not, in fact, interrogated defendant after the request for counsel. The court further found defendant's admission to have been spontaneously made. Investigator Glick's statements about guns, police and his intention to obtain a search warrant, were held to have been "innocent comments which were made without any intention to elicit a response." Defendant subsequently pleaded guilty, after the commencement of his trial, to the reduced charge of attempted criminal possession of a weapon in the third degree. It is well settled that "If [a suspect] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning" (Miranda v Arizona, 384 US 436, 444-445). Investigator Glick's comments were, in our view, "calculated to get a response" (see People v Colon, 62 AD2d 398, 405), and were tantamount to further interrogation. (See People v Grant, 59 AD2d 661 [concurring opn]; Combs v Wingo, 465 F2d 96.) Accordingly, the alleged admission should have been suppressed. In view of the fact that "full disclosure" of the circumstances resulting in the alleged admission did not come to light until Investigator Glick's testimony at the Huntley hearing, defendant should be permitted to renew his motion to suppress the weapon found in his car (see CPL 710.40, subd 4; People v Jones, 38 Misc 2d 125). Our granting of leave to renew should not be taken by the County Court as an indication that the weapon should be suppressed. The testimony at a further hearing may reveal that since the automobile had been impounded, the weapon may be utilized as evidence under "the inevitable discovery" theory (see People v Fitzpatrick, 32 NY2d 499, cert den 414 US 1033). Latham, J. P., Damiani, Shapiro and Margett, JJ., concur.