THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ALEXANDER GEORGE and MICHAEL GREEN, Respondents. — Order, Supreme Court, Bronx County (Cerbone, J.), entered March 21, 1980, granting defendants' motions to suppress statements and physical evidence, unanimously reversed, on the law and the facts, so far as appealed from, and the motions to suppress physical evidence are denied. Two police officers on radio motor patrol received a radio run to the effect that two men, armed with guns, were in front of 2100 Eastchester Road in Bronx County. The radio run was based upon an anonymous 911 telephone call that included no further information. Arriving at the address within a few minutes, the officers observed one man, defendant George, standing inside the vestibule and the other defendant, Green, standing a short distance from the vestibule door. One of the officers, Officer Antonucci, emerged from his patrol car with gun drawn; the defendants were ordered up against the fence and the other officer, Officer DiVico, frisked them. While they were frisking the defendants, the officers asked them what they were doing there and defendant Green said they were waiting for a taxi. Defendant Green said he lived in the building and defendant George said he lived around the corner. No weapons or contraband were found on the person of either defendant. However, as Officer DiVico was frisking defendant Green, he noticed a shopping bag on the ground about 12 inches from defendant Green's leg. The top of the shopping bag was open. Leaning forward to look inside, Office DiVico saw that "the whole top" of the bag "was full of glassine envelopes with rubber bands wrapped around" them. He asked who owned the shopping bag and defendant George responded, "It is not my bag." Officer DiVico reached into the bag, took out a packet of glassine envelopes containing

white powder and, being himself inexperienced with narcotics cases, asked his partner, "What's this" to which his partner replied, "They are quarter bags" i.e., of narcotics. The officers then handcuffed the defendants and took them and the bag to the station house. The bag proved to contain 3,000 glassine envelopes with 15 pounds of a substance containing heroin. The Supreme Court has suppressed both the statements and the physical evidence. The People on this appeal urge as error only the suppression of the physical evidence. The People concede that the 911 telephone call, otherwise unauthenticated, was not a sufficient basis for frisking the defendants. But the shopping bag and the physical evidence sought to be suppressed were not discovered as part of the frisk; they were not on the person of either defendant. They were on the sidewalk in a public street in a shopping bag open at the top in which police officers could, without touching the bag see the glassine envelopes. In those circumstances, the defendants had no legitimate or reasonable expectation of privacy with respect to the contents of the shopping bag. In *Rawlings v Kentucky* (448 US 98, 106), the Supreme Court said: "Had petitioner placed his drugs in plain view, he would still have owned them, but he could not claim any legitimate expectation of privacy." That appears to us to be precisely the present situation. The defendants had no reasonable or legitimate expectation of privacy in the open shopping bag in plain view on the ground in a public street. The defendants' reasonable expectation of privacy cannot rest on the assumption that the officer who first looks into the open bag will be unfamiliar with narcotics cases, or even that he might not notice the white powder in the transparent glassine envelopes. That the officer reached into the open exposed shopping bag to take out the bundle of envelopes does not change the result. This is not a case of an officer reaching into the defendant's clothing which the defendant was wearing, or opening a closed package whose contents cannot be ascertained from the outside. If reaching into the shopping bag was an intrusion, it was so minimal as to be a reasonable intrusion, within the "touchstone" of Fourth Amendment analysis, i.e., " 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' *Terry* v. *Ohio,* 392 U. S. 1, 19 (1968)" *(Pennsylvania v Mimms,* 434 US 106, 108, 109). Further, "the courts have held that evidence obtained as a result of information derived from an unlawful search or other illegal police conduct is not inadmissible under the fruit of the poisonous tree doctrine where the normal course of police investigation would, in any case, even absent the illicit conduct, have inevitably led to such evidence." *(People v Fitzpatrick,* 32 NY2d 499, 506.) In the present case, if the officer's seeing the thousands of glassine envelopes in plain view did not itself trigger the realization on the officer's part that these were narcotics, the discovery of that fact was inevitable. Inevitably, the less experienced officer, whether or not he reached into the bag, would ask his more experienced partner what they were dealing with. And as the defendant Green denied the bag was his, the officers could hardly leave a shopping bag containing thousands of glassine envelopes in the street. They would have to take it into the station house where inevitably the narcotics would be discovered. Concur — Birns, J. P., Carro, Silverman and Bloom, JJ.; Sandler, J., concurs in the result only.