■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JUAN SANTANA, LUCIA SANTANA and NIGEL CERDEIROS, Respondents. — Appeal by the People from an order of the Supreme Court, Queens County (Leahy, J.), dated October 11, 1983, which, after a hearing, granted defendants' motions to controvert a search warrant and to suppress the evidence seized under its authority.

Order reversed, on the law, defendants' motions to suppress denied, and matter remitted to the Supreme Court, Queens County, for further proceedings on the indictments.

We disagree with the conclusion of Criminal Term that the affidavit of the police officer submitted in support of the application for a search warrant did not contain sufficient facts to permit the issuing magistrate to conclude that probable cause

existed to issue a warrant for the search of the top-floor apartment of a private three-family dwelling in which defendants Santana resided.

We need not decide whether the "two-pronged" test developed in *Aguilar v Texas* (378 US 108) and *Spinelli v United States* (393 US 410), which was apparently diluted or replaced by the "totality of the circumstances" test pursuant to the Supreme Court decision in *Illinois v Gates* (462 US 213, 230-231, 103 S Ct 2317, 2328, reh den __ US __, 104 S Ct 33) for evaluating the sufficiency of search warrant affidavits based upon information supplied by informants, is still the law of New York, because we find that the affidavit was sufficient under either test (see *Massachusetts v Upton,* 466 US __, 104 S Ct 2085; *People v Cantre,* 95 AD2d 522, 525).

The attesting officer's affidavit, which indicated that he was assigned to the Queens narcotics area, was based upon his and fellow officers' independent surveillance of the premises in question over a period of approximately 20 days. Throughout this time period encompassing the evening and day, the officers observed numerous persons walking into the Santanas' home and, then leaving after a short time. Based on the attesting officer's training and experience in narcotics investigations, he concluded that the activity was indicative of illegal drug trafficking. Additionally, two informants, at two separate times, entered the top-floor apartment and exited therefrom a short time later, each with cocaine in his possession. With respect to the first informant, the affidavit indicated that, while waiting outside the subject premises for that informant to arrange for a purchase of cocaine, an undercover officer, contrary to that informant's instructions, went to the entrance of the top-floor apartment and, after he rang the bell, he was buzzed into and entered the hallway. From there, he observed a female in the top-floor apartment who stated to him "You can't come up, he told you to wait outside". These observations corroborated in significant detail the information provided to the police by that informant. With respect to the second informant, he and his automobile were searched by the police, and, finding no contraband, the police accompanied the informant to the subject premises, waited outside that location in their automobile, observed the informant enter and exit the entrance to the top-floor apartment, and followed him to a prearranged location where the informant turned over a quantity of cocaine and the remainder of the "prerecorded" purchase money provided to the informant by the police.

The informants' reliability and the bases of their knowledge were established by the fact that the informants were not

merely reporting rumors or suspicious activity, but actually participated in the illegal activity (see *People v Comforto,* 62 NY2d 725; *People v Montague,* 19 NY2d 121, cert den 389 US 862; *People v Maldonado,* 80 AD2d 563; *People v Hitt,* 61 AD2d 857). Niehoff, J. P., Boyers, Lawrence and Eiber, JJ., concur.