OPINION OF THE COURT
Bernard Fuchs, J.
Defendant is charged with criminal possession of a weapon in the third degree and four counts of criminal possession of stolen property. He moves to controvert a search warrant and suppress the evidence recovered from his apartment. A hearing was held before me on October 31, November 1 and November 2, 1984. Police Officers Patrick Keane, Richard Briecke and Terence J. Murnane, Detective Jesse Gonzalez and Sergeant Henry Sarno all testified. I credit the testimony of these witnesses.
On March 21, 1984, at about 1:00 p.m., Officers Keane and Murnane arrested two males. When questioned, one of them (the confidential informant) reported a fencing operation on Boerum Street and Graham Avenue. He told Officer Murnane that when he had been in the Boerum Street apartment on March 19,1984, the tenant “Edgar” had told him that the property he saw there was stolen. There were televisions, stereos, radios and jewelry in the living room.
Sergeant Sarno then directed Officer Murnane to check the address. He proceeded there with the confidential informant and *407 Officer Briecke. They identified the building as 153 Boerum Street.
Officer Briecke and the informant entered the building at about 8:30 p.m., leaving Officer Murnane in the car. On the third floor, the informant pointed out Edgar’s apartment. The hall was dimly lit but a painted or inked “4” was visible on the door. (Later, when Officer Briecke returned to execute the warrant, he found a metal “3” on the frame above the door.)
Upon his return to the 75th Precinct, Officer Murnane contacted the Auto Crime Squad and found that they had recovered stolen automobiles on the confidential informant’s information. At about 11:00 p.m., Sergeant Sarno and Officer Murnane mentioned defendant to Detective Jesse Gonzalez. He told them defendant’s last name and that in April 1981, as an undercover, he had, during a “sting operation”, arrested defendant for criminal possession of stolen property, which was recovered from apartment “3” at 153 Boerum Street along with an unloaded shotgun. Detective Gonzalez also supplied defendant’s height, weight and date of birth.
In checking defendant’s criminal background, Sergeant Sarno found that defendant had been arrested twice for criminal possession of stolen property. From the 90th Precinct in which 153 Boerum Street is located, Sergeant Sarno learned that their Robbery Unit had conducted an unsuccessful “sting” against defendant in the summer or fall of 1983. They also indicated “some knowledge” that defendant was a “fence” at 153 Boerum Street and supplied a photo of defendant which the confidential informant identified as “Edgar”.
Sergeant Sarno and Officer Murnane then prepared a warrant and supporting affidavit to search defendant and his apartment at 153 Boerum Street. A “riding” Assistant District Attorney who was at the precinct reviewed the papers, consulted his supervisor and approved them.
The warrant was signed by a Criminal Court Judge at about 2:00 a.m. on March 22, 1984. It commanded that “between 6:00 a.m. and 9:00 p.m. or at any time thereafter” the police were “to make an immediate search of Apartment 4 at 153 Boreum [sic] Street * * * and of the person of Edgar Acevedo.” Officer Murnane’s supporting affidavit named the confidential informant as the source of information that the defendant held stolen property in apartment 4 and that the informant had been there on March 19, 1984 at 4:00 p.m., had seen the stolen property and had heard defendant admit it was stolen.
*408 The affidavit also stated that defendant had been arrested April 10,1981 for operating a “fence” at 153 Boerum Street from which police had then recovered stolen property and a shotgun; that defendant had been the subject of a “sting” operation in December 1982 at that location; that Officer Murnane, and other members of the 75th Precinct Robbery Identification Program, had been to the building and observed that it was as described by the confidential informant and that there were no mailboxes with names on them; and that the police had recovered stolen automobiles using the confidential informant’s information. The reasons given in the affidavit for requesting night service of the warrant were “to prevent the subject’s escape and to safeguard” the executing officers and to insure defendant’s presence. No other information was placed before the Judge.
At about 4:15 a.m. on March 22, 1984, Officer Keane entered 153 Boerum Street with the confidential informant. Sergeant Sarno and other police were behind them ready to execute the warrant. Officer Keane asked the informant to point again to the door where the police were to search. He walked halfway to the fourth floor and pointed to a door there corresponding to the one he had previously indicated on the third floor. This door was marked “4 L”.
Sergeant Sarno doubted the accuracy of this designation. He knocked at “4 L” and shouted, “Police.” A Hispanic woman opened the door disclosing a nearly empty apartment. When he showed her and some children defendant’s photo and said, “Edgar”, she pointed down to the apartment below. Sergeant Sarno went downstairs and directed a search of apartment “4”. Fifty-seven items of contraband were recovered.
Defendant’s grounds for controverting the warrant are: (i) it does not describe the place to be searched with sufficient particularity; (ii) it was executed 1% hours before the search was authorized by its terms; (iii) there was no probable cause for any search; (iv) there are two alleged misrepresentations in the affidavit supporting the warrant; and (v) there is no statutory justification for a night search. From Officer Keane’s request that the confidential informant point out defendant’s apartment a second time, defendant infers that the warrant’s statement of its location is insufficiently particular.
A description which enables the executing officer, with reasonable effort, to identify the place intended, is sufficiently particular (Steele v United States, 267 US 498 [1925]; People v Cordero, 124 Misc 2d 43 [Sup Ct, Kings County 1984]). The warrant specified apartment “4” at 153 Boerum Street. There *409 was only one apartment so designated in that building. The fact that the same apartment as also designated “3” and the one above it was designated “4 L” does not impair the sufficiency of the description because a literal compliance with the warrant’s command would lead to the right door.
There was no search of apartment “4 L” which would execute the warrant, as defendant claims. Nor does the confidential informant’s incorrect designation of apartment “4 L” on his second visit impair the particularity with which apartment “4” was described in the warrant.
The warrant was dated March 22, 1984. It commanded, “between 6:00 a.m. and 9:00 p.m. or at any time thereafter * * * an immediate search”. Since the warrant was signed at about 2:00 a.m., there is, at least literally, a conflict in its terms. It could not authorize both an immediate search and one which must wait until 6:00 a.m., when it also purported to authorize a night search. The language “or at any time thereafter” is understood by both parties to signify an intent to authorize a search after 9:00 p.m.
A warrant which purports to authorize an immediate search at any time of the day or night could not have been intended by the issuing judge to be inoperative for four hours after it was issued. Execution of the warrant at 4:15 a.m. on March 22,1984 was therefore within its terms (People v Horton, 32 AD2d 707 [3d Dept 1969]; see also, People v Arnow, 108 Misc 2d 128 [Sup Ct, NY County 1981]).
Defendant argues that there was no probable cause for the warrant because the police did not adequately confirm the confidential informant’s information. When probable cause for a search is based on information supplied by a confidential informant, the information is required to satisfy the two-pronged test of Aguilar v Texas (378 US 108 [1964]) and Spinelli v United States (393 US 410 [1969]). The affidavit must state the factual basis for the informant’s knowledge of the criminal activity and establish that his information is reliable.
Both tests are satisfied in the present case. The affidavit sets forth the informant’s personal observation of the stolen property in defendant’s apartment on March 19,1984 (only two days before) and defendant’s admission to the informant that the property was stolen. The informant’s reliability appears from the affidavit’s reference to his information which led to the recovery of stolen automobiles.
Defendant’s prior arrest for criminal possession of stolen property and the recovery of contraband from the same apartment as *410 well as police investigation of defendant for similar offenses prior to the informant’s visit to defendant’s apartment are also set forth in the affidavit (see, People v Demers, 96 AD2d 714 [4th Dept 1983]). Added to direct police observation of the exact apartment door designated by the informant, these facts bolster the conclusion that the informant’s information was reliable. People v Elwell (50 NY2d 231 [1980]) is not to the contrary because there the confidential informant did not reveal the basis for his knowledge. People v Lypka (36 NY2d 210 [1975]) and People v Demers (supra) required, at most, that the informant’s information be sufficient (as it is here) to constitute probable cause. If the factual basis of the informant’s knowledge is not shown, the omission may be supplied, as in Demers, by independent police observation of facts suggesting criminal activity. Such observation was not required here.
The Supreme Court recently abandoned the Aguilar-Spinelli requirement and replaced it with a less stringent “totality of the circumstances” approach (Illinois v Gates, 462 US 213 [1983]). The rule remains unchanged, however, for purposes of New York State constitutional law (see, People v Elwell, supra; People v Bigelow, 105 AD2d 1110 [4th Dept 1984]; NY Const, art I, § 12). In Elwell, the court insisted on a more demanding application of the Aguilar-Spinelli rule under the NY Constitution than might be required for 4th Amendment purposes. The present case, in any event, meets the more stringent standard (see, People v Santana, 106 AD2d 523 [2d Dept]).
The two alleged misrepresentations in the Murnane affidavit are that (i) the affiant “along with members of the 75th Robbery Identification Program responded to 153 Boreum [sic] Street * * * and observed the building, hallway * * * There were no mail boxes with names on them”; and (ii) defendant was the subject of a sting operation in 1982. The first of these statements is more inartful than false. The affiant had not entered 153 Boerum Street but his partner, Officer Briecke had and was apparently the source of this information.
The 1982 date of the sting operation is wrong but there was in fact a successful sting operation in April 1981 and another in 1983 which failed. Neither of the representations is materially misleading or intended to mislead and neither is essential to the application. Its other representations are sufficient without these to show probable cause for the search. The two misrepresentations, if such they were, are therefore not fatal (Franks v Delaware, 438 US 154 [1978]).
The warrant was executable at any time of the day or night and was in fact executed at about 4:15 a.m. To justify such a *411 search the sworn application must allege reasonable cause to believe that (i) the warrant cannot be executed between 6:00 a.m. and 9:00 p.m., or (ii) the contraband will be removed or destroyed if not seized forthwith (CPL 690.35). Neither allegation appears in Officer Murnane’s affidavit, nor is either fact otherwise established. The night search directed by the warrant was, therefore, illegal. There was no basis on which the warrant-issuing court could have determined that it was authorized (CPL 690.35, 690.45).
The People nevertheless oppose suppression of the evidence. They argue that the warrant was obtained from a detached, neutral magistrate and executed in good faith by officers who reasonably relied on the magistrate’s grant of authority. United States v Leon (468 US _, 104 S Ct 3405, 82 L ed 2d 677 [1984]) recently held the exclusionary rule to be no longer applicable in such circumstances.
Police action in the present case (unlike United States v Leon) infringed only defendant’s right under CPL 690.45 to be free of night intrusions absent some colorable judicial determination of need therefor. Procedures required for night searches are said to be of less than constitutional dimension (United States v Searp, 586 F2d 1117 [6th Cir 1978], cert denied 440 US 921; People v Arnow, 108 Misc 2d 128 [Sup Ct, NY County 1981], supra). Evidence seized in breach of a statute is arguably still less subject to suppression than that obtained by violating the Constitution’s probable cause requirement (as the police did in United States v Leon, supra).
Even before United States v Leon (supra), noncompliance with procedures for obtaining a night warrant did not justify suppression of the evidence. Suppression was denied, for example, when the warrant lacked a night search authorization but the supporting affidavit disclosed a good-faith basis for it (People v Arnow, supra) and where the warrant ordered no night search and the supporting affidavit included neither a request for, nor a statement justifying one (United States v Searp, supra).
The Arnow and Searp searches were sustained because the statutory justification for a night entry was clear, as both the issuing judge and those executing the warrant in each case knew. But “suppression would be required when, based on the fact * * * known to the police * * * permission for a night search would have been refused” (United States v Searp, 586 F2d, at p 1125, supra). Permission was not refused in the present case, but its grant was either inadvertent or improvident because no justification for it was placed before the issuing judge and there *412 is no evidence that any was known to the police. Suppression may not be withheld, therefore, on the authority of Searp or Arnow.
The question remains, then, whether United States v Leon (supra) releases the challenged evidence from the bonds of suppression. It does so only if this case falls within Leon’s terms and the rule under New York’s Constitution is equally liberal.
The search and seizure provisions of the US and NY Constitutions, although identical, have not received identical interpretations. See, People v Smith (59 NY2d 454 [1983]), People v Gokey (60 NY2d 309 [1983]), and People v Elwell (50 NY2d 231 [1980]), all of which are more restrictive of police conduct than is the Supreme Court in comparable cases.
Nor have the two jurisdictions always agreed on whether the remedy of suppression is appropriate to control unreasonable police searches or seizures. Even after Weeks v United States (232 US 383 [1914]) required suppression in the Federal courts, New York held to a more conservative standard. In People v Defore (242 NY 13, 21 [1926]) the court (Cardozo, J.), declined to let the “criminal * * * go free because the constable has blundered.”
People v Defore (supra), however, determined defendant’s rights against unreasonable search and seizure only under the US Constitution and then Civil Rights Law § 8. The latter provision did not become part of the NY Constitution until 1938 when it was incorporated in article I, § 12.
It was left for People v Richter’s Jewelers (291 NY 161 [1943]) to rule that the new State Constitution did not require suppression of illegally seized evidence. The court held that Defore (supra) had authoritatively interpreted the same language which the draftsmen of the State Constitution had not changed. (See also, Sackler v Sackler, 15 NY2d 40, 42 [1964].) Only under the compulsion of Mapp v Ohio (367 US 643 [1961]) did the suppression rule eventually apply in this State.
Despite this long-standing reluctance to suppress evidence, the New York courts have not seized opportunities to enforce the “good-faith exception”. (People v Jennings, 54 NY2d 518 [1981]; People v Zimmerman, 101 AD2d 294, 297 [2d Dept 1984] [“the good-faith exception * * * has not * * * been recognized by the Supreme Court * * * and * * * has been rejected by the courts of this State”]; cf. People v Young, 55 NY2d 419 [1982].) Most authoritatively, People v Gokey (supra) suppressed as illegally seized under the State Constitution evidence which the 4th *413 Amendment would not have excluded. Gokey implicitly overrules Defore and Richter’s Jewelers (supra) and carries the reversal of their policy even beyond Federal limits. There is little reason to believe, therefore, that evidence seized in contravention of State law may be received at trial even if Leon (supra) permits it (see, People v Bigelow, 105 AD2d 110, supra).
United States v Leon (supra), itself, however, does not reject suppression as a remedy in every instance. If the good-faith exception is to be applied under Leon, “the officer’s reliance on the magistrate’s probable-cause determination and on the technical sufficiency of the warrant [must] * * * be objectively reasonable” (468 US _, _, 82 L ed 2d 677, 698, supra). The criterion of good faith is whether “a reasonably well-trained officer would have known that the search was illegal despite the magistrate’s authorization.” (468 US_,_, 82 L ed 2d 677, 698, n 23, supra.) The objective good faith Leon requires is absent when the warrant is “based on an affidavit ‘so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable’ ” (468 US_,_, 82 L ed 2d 677, 699, supra).
In the present case neither probable cause nor its indicia were lacking either in fact or in the affidavit supporting the warrant. But nothing in the case suggests the remotest justification for a night search which was nevertheless requested and granted. A blunder of such magnitude tests too severely even the new tolerance of United States v Leon (supra). For any “reasonably well-trained officer” should have known that this search was illegal even with the warrant and even after review of both warrant and application by an Assistant District Attorney.
There is no occasion to distinguish for present purposes between a supporting affidavit which lacks indicia of probable cause and one which fails utterly to justify a night search. In either case the affidavit is so inadequate “as to render official belief in [its grounds for the search] * * * unreasonable.” Neither Leon (supra) nor any New York authority permits the reception of evidence seized under a warrant so feebly justified.
There is, nevertheless, good reason to decline suppression of the contraband. The hearing evidence revealed clearly what would have happened if the police had not precipitately executed the warrant before 6:00 a.m. or if a night search had been denied. The same police team would inevitably have executed the same warrant after 6:00 a.m. and recovered the same contraband.
*414 Nothing in the evidence suggests that defendant would have acted, between 4:00 a.m. and 6:00 a.m., to defeat execution of the warrant or that he or the contraband would not have been in the same place at 6:00 a.m. or later. Nor is there any indication that the police would not have executed the warrant as early as its terms permitted if it had been limited to the daytime.
The warrant’s improper authorization of a night search was not in itself fatal because the night provision was severable. (See, People v Hansen, 38 NY2d 17 [1975].) If the same warrant had been executed in the daytime, the search would have been valid (People v Varney, 32 AD2d 181 [2d Dept 1969]; People v Mangialino, 75 Misc 2d 698 [Sup Ct, Monroe County 1973]).
When evidence uncovered by means which violate defendant’s rights would inevitably have been discovered by a lawful procedure, the evidence may be received. In such a case suppression goes too far because it puts the police in a worse position rather than in the same position they would have occupied absent the violation (Nix v Williams, 467 US_, 104 S Ct 2501, 81 L ed 2d 377 [1984] [systematic search for murder victim’s body — which would have succeeded within hours — halted when defendant induced, in violation of 6th Amendment rights, to lead police to the body; suppression denied]; People v Fitzpatrick, 32 NY2d 499, 506-507 [1973] [gun discovered from defendant’s statement, elicited without adequate Miranda warning, not suppressed because police would inevitably have looked in the same place and found the gun if defendant had not been questioned. The “ ‘unlawful act * * * was not a sine qua non of its discovery’ ”]; People v Payton, 45 NY2d 300, 313 [1978], revd on other grounds 445 US 573 [1980]; People v George, 84 AD2d 731 [1st Dept 1981]; People v Stroud, 63 AD2d 721 [2d Dept 1978]).
Defendant’s motion to suppress the evidence seized in his apartment is denied.