OPINION OF THE COURT
Martin Marcus, J.
In this case, a police officer included in an application for a search warrant, and the People presented to a Grand Jury, information derived from eavesdropping evidence a court had previously ruled inadmissible in the trial of another case. In their joint omnibus motion, the defendants argue that the order prohibiting the use of the eavesdropping evidence in the prior case requires that in this case the property seized in executing the search warrant be suppressed and that the indictment returned by the Grand Jury be dismissed. For the reasons set forth below, the defendants’ application for this relief is denied.
In 1991, three of the defendants named in the present *461 indictment, William Decker, Ronald Endico, and William Robbins, along with other persons, were charged in Bronx County indictment No. 2999/91 with the crimes of enterprise corruption and promoting gambling in the first degree. Much of the evidence supporting that indictment arose from eavesdropping conducted by the Bronx County District Attorney’s office. After the indictment was returned, the defendants sought to prevent the admission of that eavesdropping evidence against them on various grounds. Ultimately, the court found that the People had failed to meet the notice requirements of CPL 700.70, which mandate that within 15 days of arraignment the People provide the defendants with copies of the eavesdropping warrants and the underlying applications. As a result, the court issued an order directing that, "the People may not introduce at trial the contents of any intercepted communication obtained pursuant to an eavesdropping warrant or any evidence derived from the use of eavesdropping warrants.” (People v Capolongo, 154 Misc 2d 383, 388 [Sup Ct, Bronx County 1992].)[1] Thereafter, on October 27, 1992, the defendants Decker, Endico and Robbins entered pleas of guilty to promoting gambling in the second degree (Penal Law § 225.05), a class A misdemeanor, in satisfaction of indictment No. 2999/91, and each was fined $1,000.
Four months later, on February 26, 1993, Investigator Charles Koran of the New York State Police applied for a search warrant authorizing the search for and seizure of gambling records at a one-family house at 3305 Radio Drive, Bronx, New York. In his application, Investigator Koran offered in support of his assertion that there was reasonable cause to believe that gambling records could be found at the location, a description of recent observations of the defendants Robbins, Decker, Endico and Marcus Consaga in and around the house, other information relating to the location, and his own opinions as an expert in gambling concerning the manner in which gambling operations are conducted. Investigator Koran also stated that, "Additional grounds exist establishing *462 reasonable cause, namely that William Robbins, William Decker, and Ronald Endico were the subjects of a 2 Vi year investigation from December 1988 thru [sic] February 1991 during which time (1) they were observed arriving and leaving various locations in Bronx County during similar hours as those in the instant application; and (2) they were subjects of electronic surveillance which revealed that they were conducting a Sports betting operation involving several million dollars in sports bets. All three [were] convicted of crimes based on these activities in Bronx County under indictment number 2999/91.” In executing the search warrant issued based upon Koran’s application, the police seized gambling records, including what the People allege are tape recordings of bets accepted by Endico and Robbins.
In the Grand Jury, testimony was given concerning the seizure of the gambling records, and two of the seized tape recordings, each apparently recording a different day’s bookmaking activity, were introduced into evidence and played for the Grand Jury. Investigator Koran identified the voices on the tapes as those of Ronald Endico and William Robbins. Concerning his basis for making these voice identifications, Investigator Koran told the Grand Jury that he had spoken to Endico "at least once,” but had listened to his voice "hundreds of times,” and that he had spoken to Robbins "one other time,” but had listened to his voice "[thousands of times.” The People concede that the "hundreds of times” Koran heard Endico’s voice and the "[thousands of times” he heard Robbins’ were in conversations intercepted and recorded during the electronic surveillance whose use was prohibited in the prior case.
Thereafter, an indictment was returned on July 16, 1993, charging Decker, Consaga, and Endico, as well as Harry Milano and John Gerri, with possession of gambling records in the first degree (Penal Law § 225.20 [1]), based upon evidence that all five were present at the location when the search warrant was executed and the gambling records were seized. The Grand Jury also charged Endico and Robbins with two counts of promoting gambling in the first degree (Penal Law § 225.10 [1]), based upon the tape recorded conversations played for the Grand Jury, in which each was heard to accept more than five bets totalling more than $5,000 on each of two days.
Initially, it should be noted that the order in Capolongo (supra) could and did prohibit the use of the eavesdropping *463 evidence only against the defendants charged in that case. Thus, only William Decker, Ronald Endico, and William Robbins, whom the People failed to give the notice required by CPL 700.70, have standing to seek any relief here based on that order. The remaining three defendants, Marcus Consaga, Harry Milano, and John Gerri, who were not parties to the Capolongo prosecution, have offered no reason for extending the effect of the order in Capolongo to them, and no such reason exists. (See, People v Edelstein, 54 NY2d 306 [1981] [defendant has no standing to seek suppression of conversations based upon claim that conversations of others were not properly minimized].) The issue remains, however, as to the defendants Decker, Endico and Robbins, what effect, if any, to give in this case to the Capolongo order.
In resolving that issue, the first question that arises is whether any of the evidence gathered in the Capolongo investigation that was included in the application for the search warrant or placed before the Grand Jury constituted, within the meaning of the Capolongo order, "the contents of any intercepted communication obtained pursuant to an eavesdropping warrant or any evidence derived from the use of eavesdropping.” In the application for the search warrant, Koran clearly made reference to the "contents” of the electronic surveillance, since he stated that intercepted conversations "revealed that [the defendants Robbins, Decker and Endico] were conducting a sports betting operation involving several million dollars in sports bets.”
Although less obvious at first blush, the testimony before the Grand Jury concerning the identification of the voices of the defendants Endico and Robbins also constituted the receipt of evidence of, or evidence derived from, the "contents” of the communications intercepted in the Capolongo eavesdropping. Admittedly, Investigator Koran told the Grand Jury only that he had "listened to” the defendants’ voices, and he made no mention of the subject matter of the defendants’ communications or how he had come to hear them. However, CPL 700.70 applies whenever the People seek to offer in evidence at trial "[t]he contents of any intercepted communication, or evidence derived therefrom,” and CPL 700.05 (3), which defines the term "[i]ntercepted communication,” specifically provides that, "[t]he term 'contents,’ when used with respect to a communication, includes any information concerning the identity of the parties to such communications.” Since Investigator Koran became familiar with the voices of *464 Endico and Robbins by listening to, and perhaps actually intercepting, their conversations on the Capolongo tapes, his testimony was derived from "information concerning the identity of parties to such communications.” Accordingly, evidence derived from the "contents” of the eavesdropping evidence was used in both the application for the search warrant and before the Grand Jury.
The next question is whether the use of those "contents” on either occasion violated the Capolongo order. Because the court in Capolongo (supra) found that the People violated the notice requirements of CPL 700.70, it had no occasion to determine whether the eavesdropping evidence was lawfully obtained: whether, for example, the applications for the warrants established the necessary probable cause to support their issuance (see, CPL 700.15 [2], [3]; 700.20 [2] [b]); whether the applications sufficiently demonstrated that conventional means of investigation had been exhausted (see, CPL 700.15 [4]; 700.20 [2] [d]), and whether the police officers who executed the warrants had, as required, minimized the interception of nonpertinent and privileged communications (see, CPL 700.30 [7]). For the same reason, the court had no occasion to consider whether, immediately after the expiration of the eavesdropping, the tape recordings of the intercepted conversations had been sealed (see, CPL 700.55 [1]), and whether, within 90 days of the termination of the eavesdropping, the People had complied with their obligation to serve upon those persons named in the eavesdropping warrants and upon those intercepted during the eavesdropping, written notice that eavesdropping had occurred (see, CPL 700.50).
Had a determination adverse to the People been made on any of these issues in Capolongo (supra), it would, of course, be binding on the People in this case as well, and would have rendered the eavesdropping evidence, and any evidence derived therefrom, inadmissible here as well as there, against Decker, Endico and Robbins. (See, People v McGrath, 46 NY2d 12, 27 [1978] [Grand Jury witness may not be asked questions based on electronic surveillance where there has been a prior adjudication that surveillance was unlawful]; People v Aguilera, 82 NY2d 23 [1993] [applying principles of collateral estoppel to suppression hearings].) In Capolongo, however, the court made only one determination: that the People had failed to meet the requirements of CPL 700.70. For this reason, the defendants’ claim that the decision and order in Capolongo represents a prior judicial adjudi *465 cation of the illegality of the eavesdropping is simply incorrect. While fatal to the use of the eavesdropping evidence in that case, what consequences that finding should have here must be determined from an examination of the nature of the statutory obligation the court found that the People had failed to meet.
CPL 700.70 requires the People to provide to the defendant copies of the warrants and underlying applications pursuant to which the eavesdropping evidence was obtained. Unlike CPL 700.50, whose 90-day deadline for notice begins running from the time the eavesdropping authorization terminates, the deadline for disclosure set by section 700.70 is fixed according to the date of a defendant’s arraignment on the indictment in which the eavesdropping is to be used. (See, People v Penasso, 142 AD2d 691 [2d Dept 1988] [in requiring that eavesdropping warrant and application be made available to defendant within 15 days of a defendant’s arraignment, Legislature meant arraignment on an indictment]; accord, People v Baris, 116 AD2d 174 [4th Dept 1986].)
As originally enacted, section 700.70 was satisfied if the defendant received the warrant and application at any time up to 10 days before trial. In 1976, however, that provision was amended to provide, in relevant part, that, "The contents of any intercepted communication, or evidence derived therefrom, may not be received in evidence or otherwise disclosed upon a trial of a defendant unless the people, within fifteen days after arraignment and before the commencement of the trial, furnish the defendant with a copy of the eavesdropping warrant, and accompanying application, under which interception was authorized or approved.” The purpose of requiring that the documents be furnished within 15 days of a defendant’s Superior Court arraignment, and for strictly construing the obligation to do so, was twofold: to avoid unfairly surprising the defendant with the use of eavesdropping evidence at trial, and to permit any challenges to the use of such evidence at trial to be considered in the orderly confines of an omnibus motion schedule. (See, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 700.70, at 525 [1984]; see also, People v Basilicato, 64 NY2d 103, 118 [1984].)
Section 700.70 has, of course, no application to Grand Jury proceedings in which eavesdropping evidence is first used, since the obligation created by that provision does not arise until after the defendant is first arraigned on the indictment resulting from the presentation. Moreover, given the language *466 and purpose of section 700.70, which relate solely to the expeditious and fair trial of a particular case, it is obvious that an order prohibiting the use of eavesdropping evidence for violation of section 700.70 should only bar its use in the trial of the particular case in which the 15-day deadline is violated. Thus, a violation of this section prior to the trial of one indictment does not prevent the subsequent use of the eavesdropping evidence in Grand Jury proceedings resulting in, or the trial of, another and different indictment.
Of course, if in a particular case, the People fail to provide the warrant and application within the time constraints of section 700.70, they may not avoid the consequences by simply reindicting the defendant on the identical charges and thereby initiating a new 15-day deadline. While such a subterfuge might avoid the harm of surprise to the defendant at trial, it would completely undermine the goal of the prompt and orderly resolution of the motions relating to the original case. In this case, however, there has been no such subterfuge. The defendants have been indicted for crimes which are separate from, and which occurred long after, those charged in Capolongo (supra), and to extend the reach of the order in that case to this one would serve no purpose.
For all these reasons, I find that the order issued in Capolongo (supra) did not prevent the use made of the eavesdropping evidence in this one. Thus, despite the violation of CPL 700.70 in Capolongo, Investigator Koran was entitled to make reference to the intercepted conversations in his application for the search warrant, and could rely on those conversations in identifying the voices of the defendants in the Grand Jury.
In any case, given the limited use of the eavesdropping information both in the search warrant application and before the Grand Jury, even if the Capolongo order were read to prohibit the use Investigator Koran made here of the contents of the intercepted conversations, the result would be virtually the same.[2] Most significantly, had use of the contents of the *467 eavesdropping in the search warrant application been forbidden, its improper use would still not be fatal to the application, and would thus have not required suppression of the evidence seized in the warrant’s execution.
Had Investigator Koran’s inclusion of the eavesdropping information in his application for the search warrant violated the Capolongo order, the defendants Robbins, Decker and Endico would be entitled to suppression of the property seized pursuant to the warrant only if the application, with the eavesdropping information excluded, did not establish the requisite probable cause. (See, Franks v Delaware, 438 US 154 [1978]; People v Bartolomeo, 53 NY2d 225 [1981]; People v Alfinito, 16 NY2d 181 [1965].) Even excising the eavesdropping evidence contained in the application, however, it is evident that probable cause remains.
In his application, dated February 26, 1993, Investigator Koran set forth in detail his qualifications as an expert in gambling activities. [3] He also described observations he and other officers made at the house that was the subject of the application. On one occasion, February 17, 1993, at about 4:30 p.m., Investigator Koran observed William Decker enter the house, and at about 8:00 p.m., he observed Decker, and three of the other defendants, William Robbins, Ronald Endico and Marcus Consaga, leave it. As Robbins left, Koran saw him place a plastic bag in a garbage can in front of the house. Koran also observed Investigator Joseph Candala immediately retrieve the bag from the garbage.[4] Koran reported that the *468 bag contained "numerous illegal sports bets” and other gambling records, which Koran described and explained in his application. On February 24 and 25, 1993, two other detectives observed Robbins, Decker and others going to and/or from the house at hours similar to those of the observations of February 17th.[5]
Based on his training and experience, Koran concluded in his application that these comings and goings were "consistent with the operation of gambling activities as the majority of sports bookmaking is conducted between the hours of 4:00 p.m. and 8:00 p.m.” (See, People v Santana, 106 AD2d 523 [1984] [noting attesting officer’s training and experience in narcotics investigations as providing basis for his conclusion that observed activity was indicative of illegal drug trafficking].) Koran also reported, based on phone records, that the house, a one-family residence, was equipped with four telephone lines, a circumstance which was also "indicative of, and the common practice of gambling operations.”
Of course, in this case, no informant had told Investigator Koran that bookmaking was taking place in the house. (Cf., People v Alaimo, 34 NY2d 187 [1974] [confidential informant’s statement that he had observed bets on horse races being accepted at a particular location, along with corroboration of some details of the informant’s statement, constituted probable cause].) Moreover, taken alone, the observations of the defendants’ movements on February 17, 24, and 25 would have been as consistent with innocent behavior as with criminal conduct, and would have been insufficient to establish probable cause. (See, People v Yedvobnik, 48 NY2d 910 [1979] [observations of defendant exiting the apartment at particular hours for five consecutive days]; People v Wirchansky, 41 NY2d 130 [1976] [observations that defendant drove past premises on four successive days, returned moments later, entered hallway and drove off after a few minutes].)
Here, though, in addition to the observations of the defendants’ movements, Investigator Koran described the recovery of the betting slips and other gambling records thrown away by Robbins, and offered his expert opinions concerning their *469 significance and use. (See, Spinelli v United States, 382 F2d 871 [8th Cir 1967] [FBI agent qualified as expert on gambling permitted to testify at trial that in his opinion paraphernalia seized from apartment was used in recording of wagers].) This additional information made it more likely than not that the defendants’ movements were criminal in nature, and that the house was being used for bookmaking purposes, and was no less probative for that purpose than would be an informant’s firsthand account of gambling activity inside the premises. (See, People v Alaimo, 34 NY2d 187 [1974], supra; People v Weygant, 79 AD2d 667 [2d Dept 1980].)
In addition, while Koran did make explicit reference to the electronic surveillance (which he said "revealed that they were conducting a sports betting operation involving several million dollars in sports bets”), much of the information from the Capolongo investigation which Koran included in his application appears not to be eavesdropping evidence, nor to be derived from it, and the inclusion of such information would not have violated the Capolongo order, even if the order were applicable to this case. Specifically, Koran indicated that during the 2V¿ years the investigation lasted, from December 1988 through February 1991, the defendants Robbins, Decker and Endico were observed arriving and leaving various locations in Bronx County during hours similar to those in which they were observed arriving and leaving the house that was the subject of the warrant application.[6] These additional observations, while not of great significance in and of themselves (see, People v Yedvobnik, 48 NY2d 910 [1979], supra; People v Wirchansky, 41 NY2d 130 [1976], supra), nonetheless demonstrated the defendants’ participation in routinized conduct consistent with gambling activity over an even longer period of time. (See, People v Weygant, 79 AD2d 667 [2d Dept 1980], supra, and cases cited therein.)
Investigator Koran also reported in his application that Robbins, Decker and Endico were convicted of crimes based on *470 the gambling-related activities uncovered in the investigation. These convictions, for promoting gambling in the second degree, occurred despite and after the court in Capolongo (supra) prohibited use of the eavesdropping information in that prosecution. Accordingly, the convictions cannot be said to be "derived * * * from” the eavesdropping. Like the physical observations, these convictions were on their own of no great worth, but nonetheless only added to what was already a sufficient showing of probable cause. (Compare, People v Wirchansky, 41 NY2d 130 [1976], supra [information that defendant was known to the police and had been arrested for gambling activities is relevant when supported by other information, but insufficient to save application otherwise lacking probable cause].)
Similarly, even had the Capolongo order applied to the Grand Jury proceedings, it would have had no effect upon the validity of those counts of the indictment charging the defendants Decker and Endico with possession of gambling records in the first degree. Given that the search warrant would be valid even if the eavesdropping information were struck from the application, the defendants have no basis to complain because the property taken in executing the warrant was presented to the Grand Jury.
For all of these reasons, the defendants’ motions to suppress the evidence obtained in execution of the search warrant and to dismiss the indictment based upon the Capolongo order are denied.

. In Capolongo (supra), the trial court specifically declined to determine if its prohibition against the introduction of the eavesdropping evidence at trial constituted an order of "suppression” or of "preclusion” (154 Mise 2d, at 388, n 2). Accordingly, in this opinion, the order is referred to genetically, as one of prohibition. However, after the People filed a notice of appeal in Capolongo, the defendant moved to dismiss, asserting that the order was one of preclusion, and was thus not subject to appeal. The Appellate Division granted the motion, holding that the appeal was "unauthorized.” (People v Capolongo, — AD2d — [1st Dept, Sept. 3, 1992].)

. Had the order rendered Investigator Koran’s identification testimony before the Grand Jury improper, the appropriate remedy would be to dismiss the counts charging Endico and Robbins with promoting gambling in the first degree, with leave to the People to re-present the charges to a new Grand Jury which could hear identification testimony not reliant upon the prior eavesdropping. The People have suggested that such testimony is readily available, and have indicated that at trial no identification testimony relying upon the eavesdropping will be offered. Should the People seek to offer identification testimony derived from the Capolongo eavesdrop *467 ping, they will first be required to demonstrate that for purposes of this case, they have adhered to the notice requirements of section 700.70, and thereafter, the defendants will be permitted an opportunity to challenge the adequacy of the Capolongo applications and the propriety of the execution of the Capolongo warrants.

. Specifically, Investigator Koran stated that, "I have been assigned to the Troop F Gambling Unit since April 4, 1974. During the past nineteen years I have arrested hundreds of persons for various violations of Penal Law Article 225. I have also been an affiant for at least 40 Court ordered wire tap applications. Further, I have been qualified as a gambling expert on at least three different occasions in court. The last being in February of 1991, in the Bronx Criminal Court, as I am thoroughly familiar with the mythology and terminology of gambling. During my course of 3416 years of employment with the New York State Police, I have attended many in-service training schools pertaining to the crimes of gambling.”

. The defendants argue that it is speculative that the plastic bag that Investigator Candala recovered was the same one that the defendant Robbins discarded. However, Investigator Koran’s statement is clear: he saw Candala retrieve the bag. For purposes of the application, his statement, based on his own personal observations, needed no further elaboration.

. Investigator Koran reported that: (1) on February 24, 1993, officers observed Decker arrive and enter the house at about 4:55 p.m., three unidentified men leave the house at 7:39 p.m., and Robbins and Decker leave at 7:49 p.m.; and (2) on February 25, 1993, officers observed Robbins’ car parked outside the house at 4:30 p.m., and Decker arrive and enter the house at 4:40 p.m.

. It is, of course, possible that some of the observations were made during the eavesdropping, and may have resulted from the interception of conversations which informed the investigators of the defendants’ movements. Under such circumstances, the observations would be "derived * * * from” the eavesdropping. Neither side has addressed this question, which, in any case, is unnecessary to resolve, given that the Capolongo order did not prohibit the use of the eavesdropping information in the search warrant application, and that the application was legally sufficient even without these additional observations.