*44 OPINION OF THE COURT
Bernard Fuchs, J.
Defendant moves to controvert the search warrant which led to his arrest and the recovery of contraband. The grounds of defendant’s motion are that (i) the warrant “did not particularize the place to be searched”; (ii) the warrant was not timely executed; and (iii) the police “did not advise the issuing judge of a change in factual circumstances between the issuance and execution of the warrant”.
A hearing was held on September 29, 1983. Detective Michael F. Connors was the sole witness at the hearing and I credit his testimony.
Detective Connors, a narcotics investigator, performing a “buy operation” sent an undercover officer to 205-7 South Second Street on October 5, 1982. The undercover officer reported by radio that he had bought a controlled substance at apartment 5 on the second floor of that address. He also reported his observation of a shotgun seen through the open door of apartment 4 (next door) and a conversation he had overheard as to the drug trade in progress there.
Based on the foregoing report, Detective Connors prepared a sworn application for a search warrant on October 6,1982. The warrant was issued the same day in Criminal Court. It commanded, as is usual, “an immediate search”. Both the warrant and the application stated the address as 2057 South Second Street, second floor, apartments 4 and 5. The application also specified that the building was “located off Roebling and South Second Street”.
There is no such address as 2057 South Second Street. No building on South Second Street is numbered higher than 500 and the entire street is only four or five blocks long. The number “205-7” appears in gold leaf over the front entrance of the intended building.
Detective Connors returned to 205-7 South Second Street on October 6, 1982, for a half hour to observe that the trade continued. On October 8, 1982, he returned again, this time in uniform, for lVz hours and observed the rear courtyard, alley, stair exit, roof and the roofs of adjoining buildings. He found that apartment 5 was vacant *45 and gained entry into apartment 4 on a ruse. Neither narcotics nor a shotgun were in plain view.
In order to verify that there had been no changes in the building or defendant’s security arrangements, Detective Connors returned to the building again on October 12, 1982. The following day, October 13, 1982, with a team of 25 members assembled, briefed on the planned operation and deployed around the building, the undercover officer entered alone. When he returned and reported that he had made another buy, the team (led by Detective Connors) converged on the building, entered apartments 4 and 5 and executed the warrant.
SUFFICIENCY OF THE ADDRESS IN THE WARRANT.
The standard of sufficiency in describing the target location of a warrant is set forth in Steele v United States No. 1 (267 US 498, 503). Under that ruling “the description [must be] such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended.” Particularity of description is required so that the officer executing the warrant can direct himself solely to the target places and persons, limit the search to that which the Judge ordered and protect the privacy of others (People v Nieves, 36 NY2d 396).
In the present case there was no 2057 South Second Street. The address to be searched however, was also described to the Judge as “located off Roebling”. With a “reasonable effort” even an officer unfamiliar with the location, searching for it on a street only four or five blocks long (on which no building bears a number greater than 500) would readily “ascertain and identify” the building near Roebling marked “205-7” as “the place intended” (Steele v United States No. 1, supra). There was clearly no prospect that the wrong place would be searched (see People v Mongno, 67 Misc 2d 815).
The latter observation distinguishes the authorities on which defendant relies. In People v Rainey (14 NY2d 35) the warrant covered the whole building in which defendant had only one of the two apartments. The warrant in People v Sciacca (57 AD2d 846) covered the van which the police searched but not the garage into which they trespassed to *46 reach it. The address in both the warrant and supporting affidavit was totally wrong in United States v Constantino (201 F Supp 160) and the court declined to permit a correction. In United States v Kenney (164 F Supp 891) contraband was suppressed because the police erroneously searched 2124 instead of 2144-8th Street, a location not stated in or intended under the warrant. Identifying the premises as “next door to 512 Main Street” was fatal to the warrant in Bucari v Fili (31 F Supp 433) because there was both a North and South Main Street, and therefore two possible targets. And in United States v Sands (14 F2d 670, 671) the described premises, “2310-Vfe Seventh Avenue” did not exist but the police imaginatively searched 2308, 2310 or 2312, thereby intruding in a place not intended by the issuing official.
WAS THE WARRANT UNTIMELY EXECUTED?
The warrant, in usual form, commanded “an immediate search”. It was not, however, executed until seven days after its issuance. CPL 690.30 requires that a warrant be executed within 10 days after it is issued.
Defendant does not argue, nor could he successfully, that the command in the warrant shortens the statutory 10-day period. He contends rather that the seven-day delay invalidated the warrant because the police had “ample opportunity” to execute it earlier, e.g., on October 8, 1982, when they entered apartment 4 on a ruse.
The police may, however, delay execution of a warrant for appropriate police purposes. If they expect, for example, to find contraband only when a particular individual is present, they may wait for him to appear. They may then execute the warrant even if they doubt that the facts in the affidavit underlying the warrant were true during the entire waiting period (United States v Dunnings, 425 F2d 836 [nine-day delay]; see, also, United States v Nepstead, 424 F2d 269, 270, cert den 400 US 848 [six-day delay until “manufacturing of LSD was * * * in progress”]).
Only “reasonable promptness” is required in executing a warrant. Its command “is qualified by the practicalities and exigencies that the executing officer faces” (People v Glen, 30 NY2d 252, 261, citing United States v Dunnings, *47 supra, with approval). The authorities defendant cites hold nothing to the contrary.
Detective Connors was to execute the warrant to search an apparent drug selling situs. Danger was to be expected and the undercover officer’s observation of the shotgun made that obvious. Prudence and circumspection were clearly indicated and he practiced both by several visits to the building including his comprehensive inspection on October 8, 1982.
Meanwhile Detective Connors assembled, briefed and organized a team of 25 officers to execute the warrant — a task which quite reasonably would require several days. He kept the building under continuing surveillance and executed the warrant only after the undercover officer provided assurances by another “buy” that the drug operation continued (cf. United States v Nepstead, supra).
Defendant argues, however, that Detective Connors’ observations on October 8, 1982, in apartments 4 and 5 showed that probable cause had dissipated. At that time neither a shotgun nor narcotics were in plain view. It would be remarkable if they had been. Detective Connors was then in uniform. Since he made no search it does not follow that narcotics or weapons were not there. Nor is it necessary for the contraband to be continuously present between issuance and execution of the warrant (United States v Dunnings, supra) especially when, as here, the premises were under continuing surveillance (United States v Nepstead, supra). As to apartment 5, see infra.
FAILURE TO ADVISE THE ISSUING JUDGE OF CHANGED CIRCUMSTANCES.
Defendant argues quite logically that the issuing Judge, upon receiving new information material to his warrant issuing decision may vacate the warrant. He contends, accordingly, that Detective Connors had a duty to inform the Judge, after his visit to apartments 4 and 5 on October 8, 1982, that he saw no “drugs, drug paraphernalia or weapons there and that Apartment 5 was vacant”.
This court has already observed, however, that probable cause is not dissipated by a doubt, arising between issuance and execution of a warrant, that the facts on *48 which it was issued remain true (United States v Dunnings, supra ). In the present case, moreover, there was no doubt. Since Detective Connors was in uniform and did not search he was not required to question from his October 8, 1982 observations, whether drug activity had ceased or whether there were weapons present.
Nor does the fact that apartment 5 was vacant on October 8, 1982, warrant the conclusion that probable cause was dissipated. The two apartments, 4 and 5, are to be viewed as a unit. Both were to be searched contemporaneously by the same officer under the same warrant based on observations made at the same time about what appeared to be the same drug trade.
It is undeniable, nevertheless, that the absence from view on October 8, 1982, of drugs, drug paraphernalia and weapons and the observation that apartment 5 was vacant would be material to a Judge’s warrant issuing decision. The question remaining then is whether an executing officer’s omission to return to the warrant issuing Judge with newly discovered facts which are insufficient to dissipate probable cause, but nevertheless material to the Judge’s warrant issuing decision, requires a trial court to treat the warrant as a nullity.
The effect of nullifying a warrant in such circumstances would be to place in jeopardy or at least hamper a great deal of thorough and meticulous police work with no corresponding benefit to the public’s interest in freedom from unreasonable searches. The present case offers a ready example.
Detective Connors used elaborate care and took several days to plan and prepare for execution of the warrant. The information he acquired during that time should rightly have been placed before the warrant issuing Judge if known at the time it was applied for. But that information acquired after the warrant issued did not dissipate probable cause, as this court has ruled, and thus did not signify that execution of the warrant would violate any person’s right to privacy.
If Detective Connors had been constrained to return to court for revalidation of the warrant because of his observations, made while preparing to execute it, the entire plan *49 could well have been disrupted and in many such cases the quarry would escape. Only a definite reason to believe that probable cause has dissipated should impose such a duty (cf. United States v Dunnings, supra). The warrant should not, in any event, be invalidated unless probable cause has indeed dissipated. In the present case probable cause had not dissipated and there was no reason for Detective Connors to believe it had.
Motion denied.