**Richard G. BANKS, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 82SC375.**

Supreme Court of Colorado, En Banc.

Feb. 19, 1985.

As Modified on Denial of Rehearing March 18, 1985.

David F. Vela, Colorado State Public Defender, Margaret L. O'Leary, Michael J. Hever, Deputy State Public Defenders, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Laura E Udis, Asst. Atty. Gen., Denver, for respondent.

ERICKSON, Chief Justice.

We granted certiorari to review the court of appeals' decision in *People v. Banks*, 655 P.2d 1384 (Colo.App.1982), that affirmed the defendant's conviction for first degree murder. Section 18–3–102, 8 C.R.S. (1978). The court of appeals held that although the defendant had been arrested pursuant to a warrant that was later invalidated, the taint of the illegal arrest was sufficiently attenuated to permit admission of the defendant's confession into evidence. The court of appeals also held that the admission into evidence of a transcript of defendant's confession did not violate either the best evidence rule or the defendant's due process rights, even though the tape recording of the confession had been erased prior to trial. We affirm the defendant's convictions, but for somewhat different reasons.

## I.

On October 12, 1978, the owner of a Denver jewelry store was shot and killed during the commission of an armed robbery. When the police arrived at the scene, witnesses informed them that a black man and a white man had been in the vicinity of the jewelry store earlier that morning. One witness stated that shortly before the robbery was discovered, he had seen a black man running in the alley behind the jewelry store carrying several boxes.[1] Another witness told the police that he had seen a white man sitting in a green Cadillac in the alley behind the jewelry store.[2] Inside the store, the police found an overnight bag containing twelve watches on the floor by a display case. The police also obtained fingerprints from the inside of a watch display case which were later found to match the defendant's.

On October 26, 1978, Detective W.L. Ridle executed the following affidavit in connection with his application for an arrest warrant:

On October 12, 1978 at the location of 5040 Federal Blvd., Denver, Colorado, William L. Sather was shot and killed in the Sather Jewelry Store, 5040 Federal Blvd.

Detectives, William Ridle and Leroy Dominguez responded to 5040 Federal Blvd. and were met there by Officer J. Garrett, who indicated that the victim, William Sather, owner of Sather Jewelry, was found laying [sic] face up on the floor behind a display counter by Newspaperman Ercil Craven. Denver General Ambulance # 4, attendants Zebedee, King and D. Archuleta responded and pronounced the victim dead at the scene.

Detectives J. Arko and S. Gacioch of the Denver Police Crime [Laboratory] responded to the scene to take photographs, fingerprints and measurements.

An autopsy was performed on William Sather by Dr. H. Toll who related that this death was due to a gunshot wound to the head.

Information was received by your affiant from William Sather Jr., [s]on of the victim, that numerous items of jewelry appeared to be missing at that time.

On October 21, 1978 Detectives Ridle and Dominguez submitted to the Crime [Laboratory], Richard Banks name and Police Department Number so his prints could be compared with prints found at the scene of this Robbery-Homicide.

---

1. The witness later identified Gary Thorpe as the man he had seen running in the alley. A jury found Thorpe guilty of first-degree murder, aggravated robbery, and conspiracy to commit aggravated robbery. This court affirmed Thorpe's convictions. *People v. Thorpe*, 641 P.2d 935 (Colo.1982).

2. At trial, the witness identified the defendant as the man he had seen sitting in the Cadillac.

On October 23, 1978 Detective W. Ridle was informed by Detective Ramsey of the Crime [Laboratory] that prints recovered from inside Sather Jewelry were those of Richard Banks DPD# 139255.

Due to the information gathered in this investigation, Detectives W. Ridle and L. Dominguez request that this warrant be issued for the arrest of Richard BANKS, DPD# 139255, D.O.B. 7–9–50 for Investigation of First Degree Murder and Aggravated Robbery.

Note: Fingerprints recovered inside the [jewelry] store were found behind the counter out of the access of the general public.

A county judge on October 26, 1978, issued a warrant for the defendant's arrest based on Detective Ridle's affidavit. In ruling on the defendant's motion to suppress his confession, the district court, proceeding from what appears to be an assumption that the arrest warrant was legally insufficient to constitute probable cause, concluded that the illegal arrest was sufficiently attenuated by intervening circumstances.

The court of appeals, in affirming the district court's suppression ruling, found that the affidavit was insufficient because it failed to establish that the defendant was at the jewelry store at the time of the crime. The court of appeals, however, went on to conclude that the defendant's subsequent confession was sufficiently attenuated from the illegal arrest and was therefore constitutionally admissible. In reaching its conclusion, the court of appeals noted that the police had acted in good faith reliance on the arrest warrant and that the deterrent objectives of the exclusionary rule would not be advanced by suppressing the defendant's statement. 655 P.2d at 1386. Because we hold that the affidavit in this case established probable cause for the defendant's arrest, it is not necessary to address the attenuation issue or to determine whether a good faith exception to the exclusionary rule should be applied to the facts of this case.

## II.

Probable cause to arrest exists when there are facts and circumstances sufficient to warrant a person of reasonable caution to believe that the person about to be arrested has committed a criminal offense. *E.g., Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *People v. Rueda,* 649 P.2d 1106 (Colo.1982); *People v. Navran,* 174 Colo. 222, 483 P.2d 228 (1971). Probable cause is to be measured by "reasonableness" rather than mathematical probability. *Dunaway v. New York,* 442 U.S. 200, 213, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979); *People v. Hearty,* 644 P.2d 302 (Colo.1982). A court must interpret an affidavit in support of a warrant "in a common sense and realistic fashion" and should not impose "technical requirements of elaborate specificity." *United States v. Ventresca,* 380 U.S. 102, 108–09, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965); *see also Hearty,* 644 P.2d at 310; *People v. Ball,* 639 P.2d 1078, 1082 (Colo.1982). Because resort to the warrant process is the preferred constitutional procedure, an arrest warrant based on a marginal affidavit might well withstand a motion to suppress under circumstances where a warrantless arrest would be constitutionally infirm. *Ventresca,* 380 U.S. at 106, 85 S.Ct. at 744.

To be sure, the fingerprint evidence described in the affidavit falls far short of the quantum of evidence legally required to sustain a conviction. Fingerprint evidence will warrant a conviction only when the fingerprints are found in the place where the crime was committed under such circumstances as to rule out the possibility that they may have been impressed at a time other than the time at which the crime was committed. *People v. Ray,* 626 P.2d 167 (Colo.1981); *Silva v. People,* 170 Colo. 152, 459 P.2d 285 (1969). There is a substantial difference, however, between the legal sufficiency of evidence to support a conviction and the legal sufficiency of evidence to justify the issuance of an arrest warrant. The former standard requires that the evidence, when viewed in a

light most favorable to the prosecution, be sufficient in both quantity and quality to support a conclusion by a reasonable mind that the defendant is guilty beyond a reasonable doubt. *E.g., People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973). The standard of probable cause, in contrast, only requires that there be reasonable grounds, not necessarily mathematical probability, to believe that the defendant participated in the crime in question. *E.g., Hearty,* 644 P.2d 302. Because the standard of probable cause is substantially less than the quantum of evidence needed to support a conviction, an affidavit need not affirmatively demonstrate that the defendant's fingerprints at a crime scene could only have been placed there at the time of the crime in question.

■ The affidavit of Detective Ridle, when read in a common sense and realistic fashion, satisfies the constitutional standard of probable cause. It basically states that William L. Sather was shot and killed during a robbery at his jewelry store on October 12, 1978, that numerous items of jewelry were stolen in the robbery, and that the defendant's latent fingerprints had been lifted from the counter in an area inaccessible to the general public. These facts, in our view, are sufficient to warrant a person of reasonable caution to believe that the defendant was implicated in the crime under investigation. *See People v. DeBaca,* 181 Colo. 111, 508 P.2d 393 (1973) (defendant's latent fingerprints lifted from a box of detergent found at robbery scene and apparently used by robbers to transport stolen goods provided probable cause to arrest defendant); *McGlumphy v. State,* 538 P.2d 1097 (Okla.Crim.App.1975) (presence of defendant's fingerprints on three forged checks passed at grocery store constituted "reasonable cause" to arrest defendant); *Marshall v. Sheriff,* 90 Nev. 39, 518 P.2d 157 (1974) (where night clerk was shot and killed in store, and accused's fingerprints and palm-prints were lifted in and about area of store reserved for employees only, the evidence of fingerprints and palmprints at scene of homicide was sufficient to establish probable cause at preliminary

hearing); *see also People v. Thrower,* 670 P.2d 1251 (Colo.App.1983) (where man with a brown paper sack entered a grocery store and purchased two ice cream sandwiches and the store owner, after noticing the butt of a gun inside the paper bag, sent one of his employees outside to obtain the man's license number, and employee was later found dead in his own automobile with a fatal gunshot wound to his head, the lifting of defendant's fingerprints from ice cream wrapper found outside the store constituted probable cause for arrest warrant).

### III.

The defendant also contends that the trial court erred in admitting a typed manuscript of his statement into evidence. At the time the defendant made his confession, a certified shorthand reporter wrote down the defendant's statement in shorthand and also tape recorded it. She later prepared a transcript of the statement from her shorthand notes and used the tape recording to check the manuscript for accuracy. The reporter, as was her normal practice, then reused the tape in a later case and erased the defendant's tape recorded statement. The defendant later made a pretrial discovery motion to obtain a copy of any recorded statement that he made to the police. Since the tapes had already been erased, however, the prosecution could only provide the defendant with a copy of the transcript. At trial, the prosecution introduced the typed transcript as the sole evidence of the defendant's confession. The defendant contends that the trial court erred in admitting the transcript since the tape recording was the "best evidence" of his statement to the police. We disagree.

■ The best evidence rule simply states a preference for the original writing in cases where the contents of the writing are directly in issue. *Bloxsom v. San Luis Valley Crop Care, Inc.,* 198 Colo. 113, 596 P.2d 1189 (1979). The rule does not create a preference for one original over another in cases where more than one original ex-

ists. *McCormick on Evidence* § 235 (E. Cleary 3d Ed. 1984). In the present case, the tape recording and the transcribed shorthand notes both constitute "original" evidence of the defendant's statement. The reporter prepared the transcript directly from the shorthand notes and used the tape recording only for comparison purposes. The reporter later certified the transcript as a true and accurate copy of her notes. Given these facts, we agree with the court of appeals that the transcript is an original with "equal dignity" to the tape recording and cannot be excluded by virtue of the best evidence rule. *Banks,* 665 P.2d at 1387; *see also United States v. Balistrieri,* 436 F.2d 1212, 1214 (7th Cir.), *cert. denied,* 402 U.S. 953, 91 S.Ct. 1620, 29 L.Ed.2d 124 (1971); *United States v. Mirro,* 435 F.2d 839, 841 (7th Cir.1970); *State v. Goodwin,* 223 Kan. 257, 573 P.2d 999 (1977).

The defendant also claims that the prosecution's destruction of the tape violated his due process rights by depriving him of "potentially" exculpatory evidence. *See, e.g., Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We do not agree.

 A due process violation occurs when the prosecution suppresses or destroys exculpatory evidence that is material to the defendant's case. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *People v. Shaw,* 646 P.2d 375 (Colo.1982); *People v. Gallegos,* 644 P.2d 920 (Colo.1982). Here, the defendant has not alleged or established that the destroyed recording contained evidence material to his case that was not in the transcript. *See, e.g., California v. Trombetta,* —— U.S. ——, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). He has not challenged the substantive portions of the transcript and has made no showing that the prosecution destroyed or omitted any evidence which, when considered in light of the entire record, would likely have "affected the outcome of the trial." *Shaw,* 646 P.2d at 381. Accordingly, we hold that the defendant's due process rights were not violated.

*See Killian v. United States,* 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961) (due process not violated where FBI agents destroyed witness interview notes after preparing report); *People v. Roblas,* 193 Colo. 496, 568 P.2d 57 (1977) (due process not violated where tape recording of witness' statement to police was inadvertently destroyed); *People v. Bynum,* 192 Colo. 60, 556 P.2d 469 (1976) (routine erasure of video tape of booking process not a denial of due process).

## IV.

 The defendant also asserts that inconsistencies in the jury instructions constitute reversible error. During the trial, defense counsel claimed as an affirmative defense that the defendant had withdrawn from participation in the robbery before the murder occurred. Section 18-3-102(2), 8 C.R.S. (1978). In preparing the defendant's case, however, defense counsel apparently misinterpreted the affirmative defense statute. The trial judge later amended the defense counsel's proffered instructions to the jury to include additional provisions of the affirmative defense statute that defense counsel had omitted. The defendant now claims that the amended affirmative defense instruction, when read in connection with his own theory of defense instruction, virtually directed that the jury return a verdict of guilty. The defendant argues that the inconsistencies in the instructions and his own counsel's apparent misunderstanding of the law, deprived him of his sixth amendment right to effective assistance of counsel.

The affirmative defense instruction was tendered by defense counsel. Defense counsel's interpretation of the statute and the giving of the instruction do not constitute plain error. Crim.P. 52(b). The error, when examined in the context of the entire trial, did not "so undermine the proper functioning of the adversarial process that the trial ... cannot be relied upon as having produced a just result." *Strickland v. Washington,* —— U.S. ——, ——————,

104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692–93 (1984).

The defendant's remaining contentions do not require further explication.

Accordingly, the defendant's conviction for felony murder is affirmed.