**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Curtis RAYFORD, Defendant-Appellee.**

**No. 86SA12.**

Supreme Court of Colorado, En Banc.

Sept. 29, 1986.

---

Alexander M. Hunter, Dist. Atty., Richard F. Good, Deputy Dist. Atty., Boulder, for plaintiff-appellant.

Carl F. Manthei, P.C., Carl F. Manthei, Boulder, for defendant-appellee.

KIRSHBAUM, Justice.

In this interlocutory appeal, the People challenge an order of the Boulder County District Court suppressing statements made by the defendant, Curtis Rayford, and certain evidence seized from the defendant's automobile.[1] The People contend that the trial court erred in concluding that the statements resulted from an arrest not supported by probable cause and that the affidavit supporting an application for a warrant to search the defendant's car failed to establish probable cause. We conclude that the defendant's arrest and the search of his vehicle were supported by probable cause. We therefore vacate the trial court's order and remand the case for further proceedings.[2]

## I

During June 1985, the Boulder Police Department obtained information that the defendant, a Boulder police officer, was possibly involved in illegal transactions involving drugs, specifically cocaine. The department initiated an investigation, and Englewood Police Department undercover officer Patricia Tedesco was enlisted to assist in the inquiry.

Late in the evening on July 10, 1985, Boulder Police Detective James Kolar observed the defendant's 1985 BMW automobile in the parking lot of a Boulder bar. Tedesco was called, and she arrived at the bar early on the morning of July 11. She met the defendant and agreed to a later meeting with him at a local restaurant. Tedesco drove to the restaurant and, prior to entering, equipped herself with an electronic transmitter to permit monitoring of her conversations with the defendant.

At the restaurant the defendant and Tedesco discussed drug usage. The defendant stated that he was a police officer and that

---

1. The People appeal pursuant to C.A.R. 4.1.

2. The People argue in the alternative that, assuming the search warrant was not supported by probable cause, the trial court erred in concluding that evidence seized pursuant to the warrant was inadmissible under a "good-faith" exception to the exclusionary rule pursuant to *People v. Deitchman*, 695 P.2d 1146 (Colo.1985). The People also challenge the district court's ruling that § 16–3–308(4)(b), 8 C.R.S. (1985 Supp.), is unconstitutional and, therefore, evidence seized pursuant to the warrant was not admissible under that statute's good-faith exception to the exclusionary rule.

Our holding that the search warrant was supported by probable cause makes it unnecessary for us to consider the applicability of a good-faith exception to the exclusionary rule or the constitutionality of § 16–3–308(4)(b).

he had used and did use cocaine. After they discussed using the drug together, the defendant agreed to obtain some cocaine and to meet Tedesco at the restaurant later that day. The defendant and Tedesco returned to the restaurant, at which time the defendant said that he "didn't get the coke" because he was unable to locate his source. The two parted company, but met again later that evening at a Boulder bar, where they agreed that the defendant would obtain some cocaine and that they would go "hot tubbing" together. The defendant agreed to telephone Tedesco on July 15, 1985, to arrange their next meeting.

The defendant called Tedesco on July 15. During the telephone conversation Tedesco asked the defendant if he had gotten the cocaine; he replied that he had, but that he did not want to talk about it on the telephone. They then agreed to meet at a Boulder bar the next evening.

At the July 16, 1985, meeting Tedesco again wore a transmitter device to permit her conversation with the defendant to be monitored by Kolar and by Boulder Police Lieutenant Robert Diezi. The defendant initially asked if Tedesco worked for a police agency and if she was "wired." When Tedesco feigned indignation over these questions and prepared to leave, the defendant asked her to stay and said that he had the "stuff" and that it was close-by. The two left the bar and entered the defendant's automobile. Tedesco said she wanted the cocaine before they went anywhere. The defendant then exited, opened the trunk of his car, returned with a small packet made out of magazine paper, and handed the packet to Tedesco. Such packets are known as "bindles" by persons familiar with drug transactions and are frequently used for packaging cocaine.

Tedesco testified at the suppression hearing that upon examining the contents of the bindle she thought the substance "looked funny" because it lacked the crystalline appearance she associated with cocaine, but that she nevertheless believed it was cocaine because of its white, powdery appearance and because of the way it was packaged and introduced to her. Tedesco immediately left the defendant's car with the bindle; and Kolar, Diezi and other police personnel arrested the defendant for possession and distribution of cocaine.

Kolar and Diezi then inspected the contents of the bindle. They testified at the suppression hearing that the substance did not appear to be a high-quality type of cocaine. Kolar testified that he performed a presumptive field test on the substance, believing that cocaine might be contained in the powder, and that as the test was being conducted the defendant stated that the substance was flour. The field test indicated cocaine was not present.

Approximately five hours later, a Boulder District Court judge issued a warrant authorizing a search of the defendant's BMW automobile, which had been transported to the Boulder County Justice Center. The warrant authorized a search for cocaine, any white powdery substance, any magazine paper folded into bindles or from which a bindle may have been cut, any instruments or paraphernalia used to cut, weigh or ingest cocaine, and all articles or papers identifying the possessor of the above items. The supporting affidavit, executed by Kolar, stated that Tedesco had informed him: (1) that based upon two previous meetings with the defendant while acting in her undercover capacity, Tedesco believed that the defendant was obtaining cocaine for her; (2) that during a July 15, 1985, telephone conversation the defendant told Tedesco he had "something," but was reluctant to discuss the matter; (3) that on July 16, 1985, Tedesco met the defendant in a Boulder bar, where the defendant stated he had "the stuff" and that it was "real close" and claimed he had "snorted" cocaine earlier that evening; (4) that while in the defendant's car, Tedesco asked to see the cocaine, and the defendant got out, opened the trunk of the car, returned to the passenger compartment, and handed Tedesco a piece of folded paper; and (5) that Tedesco observed a white powdery substance inside the paper. Kolar's affidavit

also stated that, based on his training and experience, the paper appeared to be folded into a bindle, an item commonly used to transfer controlled substances; that the defendant represented that the bindle contained cocaine; and that a presumptive field test conducted on the substance by Kolar indicated cocaine was not present. The affidavit further stated that the defendant subsequently informed Kolar that the substance was flour. During the ensuing search, a bindle containing cocaine was seized from the defendant's car.

The defendant was initially charged with one count of possession of cocaine, one count of possession of cocaine with intent to distribute, § 18–18–105, 8 C.R.S. (1985 Supp.), and one count of distribution of an imitation controlled substance, § 18–5–604, 8 C.R.S. (1985 Supp.).[3] The defendant then moved to suppress statements obtained from him following his arrest and to suppress the evidence seized from the search of his automobile.

## II

The trial court determined that although the police officers initially had probable cause to arrest the defendant for distribution of cocaine, the officers' reactions to the appearance of the substance, the negative field test result, and the defendant's statement that the substance was flour in effect destroyed the initial probable cause. The court also determined that, because the officers did not think the bindle contained cocaine, there was no evidence to establish that the substance seized would lead a person experienced in handling controlled substances to believe that the substance was the controlled substance that it was purported to be. On the basis of these findings the trial court suppressed all statements made by the defendant after the field test was conducted.

██ Because the defendant was arrested without a warrant, the prosecution must establish probable cause for the war-

rantless arrest. *People v. Roybal,* 655 P.2d 410 (Colo.1982). Probable cause to arrest exists when there are facts and circumstances sufficient to cause a person of reasonable caution to believe that at the time of the arrest an offense has been or is being committed by the person to be arrested. *Banks v. People,* 696 P.2d 293 (Colo. 1985); *People v. Florez,* 680 P.2d 219 (Colo. 1984). The probable cause standard is a "practical, nontechnical conception" that seeks to accommodate the societal interests of "safeguard[ing] citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime" and of providing "fair leeway for enforcing the law in the community's protection." *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949); *see also People v. Hearty,* 644 P.2d 302 (Colo.1982). The standard is measured by reasonableness, not mathematical probability. *Banks v. People,* 696 P.2d at 296 (citing *Dunaway v. New York,* 442 U.S. 200, 213, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979)).

██ Although we do not ordinarily disturb a trial court's finding that probable cause to arrest was lacking, *see People v. Tufts,* 717 P.2d 485 (Colo.1986), the record here compels the conclusion that the prosecution met its burden of proof. A positive field test result is not a prerequisite for an arrest of a defendant for a drug-related offense if sufficient other factors are present to support probable cause for such an arrest. *See Richardson v. State,* 622 S.W.2d 852 (Tex.Crim.App.1981). The defendant's recent promises to procure cocaine for Tedesco, his attitude in dealing with her, his claim on the night of his arrest that the "stuff" was close-by, and Tedesco's receipt of a white powdery substance packaged in a manner commonly used for the transfer of cocaine combined to provide a sufficient basis for a reasonable belief that the defendant possessed

---

**3.** The counts charging possession of cocaine with intent to distribute and distribution of an imitation controlled substance were dismissed at the preliminary hearing.

cocaine that evening.[4] *See State v. Hodges*, 105 Idaho 588, 671 P.2d 1051 (1983) (although results of two tests run on suspected drug contraband were contradictory, sufficient other factors were present to support probable cause for search); *cf. Berg v. State*, 384 So.2d 292 (Fla.Dist.Ct.App.1980) (probable cause to arrest defendant was diminished when three or four field tests on suspected illicit substance showed negative results).

■ We also disagree with the trial court's determination that the officers lacked probable cause to arrest the defendant for the offense of distribution of an imitation controlled substance. Section 18–5–602(3), 8 C.R.S. (1985 Supp.), defines imitation controlled substance as follows:

"Imitation controlled substance" means a substance that is not the controlled substance that it is purported to be but which, by appearance, including color, shape, size, and markings, by representations made, and by consideration of all relevant factors as set forth in section 18–5–603, would lead a person experienced in handling controlled substances to believe that the substance is the controlled substance that it is purported to be.

The relevant factors set forth in section 18–5–603 for consideration in determining whether a substance is an imitation controlled substance are as follows:

(a) Statements by an owner or by anyone in control of the substance concerning the nature of the substance or its use or effect;

(b) Statements made to the recipient that the substance may be resold for inordinate profit which is more than the normal mark-up charged by legal retailers of similar pharmaceutical products;

(c) Whether the substance is packaged in a manner normally used for illicit controlled substances;

(d) Evasive tactics or actions utilized by the owner or person in control of the substance to avoid detection by law enforcement authorities;

(e) The proximity of the imitation controlled substance to any controlled substances when conduct purported to be illegal under this article is observed.

At the suppression hearing, Officer Tedesco, who had previous undercover drug investigation experience and had been involved in prior cocaine cases, testified that even though she thought the substance looked "funny," she believed it was cocaine because of its white powdery appearance, the way the defendant presented it to her, and the way in which it was packaged. Detective Kolar testified that although the substance obtained from the defendant did not appear to be a high-quality type of cocaine, he tested it "under the presumption that there still may be cocaine contained in the powder." Additionally, Lieutenant Diezi, whose primary work involved narcotics investigation, testified that up until the actual testing of the substance he believed the bindle contained cocaine.

■ Although at trial this evidence may not convince the trier of fact beyond a reasonable doubt that under all of the circumstances a person experienced in handling controlled substances would be led to believe the white powder contained cocaine, that standard of proof is not required to

---

4. Where subsequently acquired information establishes that a reported fact central to an earlier probable cause determination by a magistrate was false and made intentionally or with reckless disregard for its veracity, evidence seized pursuant to the warrant must be suppressed unless other information presented to the issuing magistrate independently establishes probable cause for the warrant. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). However, mere doubt on the part of executing officers as to the truth of the facts in an affidavit supporting a request for a warrant does not necessarily require suppression of evidence seized pursuant to the warrant. The trial court's suggestion that initial probable cause may dissipate in view of later-learned facts is not a persuasive analysis where, as here, sufficient facts other than the negative field test and the defendant's characterization of the suspected substance as "flour" existed to establish probable cause to arrest the defendant for possession and sale of a controlled substance. *People v. Cordero*, 124 Misc.2d 43, 475 N.Y.S.2d 973 (Sup. Ct.1983).

determine whether probable cause existed to arrest the defendant. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; *Banks v. People*, 696 P.2d 293. The existence of probable cause is established by evidence that at the time of the arrest the officers had reasonable grounds to believe that the suspect committed an offense. *Banks v. People*, 696 P.2d 293. The officers' testimony here established that a person of reasonable caution would believe that the white powder contained cocaine, thus satisfying the prosecution's burden of proof.

### III

The trial court also determined that the search warrant was fatally defective because the information contained in the supporting affidavit was insufficient to establish probable cause for the issuance of the warrant. We disagree.

■■■ The fourth amendment to the United States Constitution and article II, section 7 of the Colorado Constitution provide that no warrant shall issue without probable cause supported by oath or affirmation. *See United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *People v. Conwell*, 649 P.2d 1099 (Colo.1982); *see also* § 16–3–303, 8 C.R.S. (1978); Crim.P. 41. Constitutional protections against unreasonable searches and seizures reflect a strong preference for the warrant process, requiring a neutral and detached magistrate to determine whether reasonable grounds are present to justify a search. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684; *People v. Hill*, 690 P.2d 856 (Colo.1984); *People v. Lindholm*, 197 Colo. 270, 591 P.2d 1032 (1979). As with probable cause to arrest, probable cause for a search depends upon probabilities, not certainties, and involves a level of knowledge grounded

in the practical considerations of everyday life on which reasonable and prudent persons act. *People v. Hill*, 690 P.2d 856; *People v. Chase*, 675 P.2d 315 (Colo.1984); *see Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

■■■ An affidavit for a search warrant establishes probable cause if it alleges sufficient facts for a person of reasonable caution to believe that contraband or material evidence of criminal activity will be found in the place to be searched. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684; *People v. Hart*, 718 P.2d 538 (Colo.1986); *see People v. Ball*, 639 P.2d 1078 (Colo.1982); *People v. Tufts*, 717 P.2d 485 (Colo.1986); *People v. Hill*, 690 P.2d 856. The issuing magistrate must make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that seizable objects will be found in the place to be searched. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527; *People v. Pannebaker*, 714 P.2d 904 (Colo.1986).

■■■ In this case, the trial court concluded that the search warrant was defective because the supporting affidavit failed to establish probable cause that an imitation controlled substance would be discovered. Assuming that analysis to be correct, we nevertheless find that the affidavit did establish probable cause to believe the search would uncover cocaine.[5] The affidavit related that Tedesco believed the defendant was obtaining cocaine for her; that on the night of his arrest the defendant stated to Tedesco that he had the "stuff" nearby and that he had used cocaine earlier that very evening; that when Tedesco asked to see the cocaine, the defendant opened the trunk of his car and, upon returning to the passenger compartment, handed Tedesco a

---

5. The defendant contends that the following items listed in the warrant were sought as evidence in connection with the imitation controlled substance offense: any white powdery substance, any magazine paper folded into bindles and magazine paper from which bindles may have been cut. However, the only item

sought under the warrant relating solely to the imitation controlled substance offense was the white powdery substance. Bindles and the paper from which they were cut may be relevant to offenses of possession or distribution of cocaine.

folded paper bindle—an item commonly used to transfer controlled substances—containing a white powdery substance; that the defendant represented the bindle as cocaine;[6] that a field test indicated no presence of cocaine in the substance; and that the defendant subsequently stated that the substance was flour. Drawing all reasonable inferences from these facts, we conclude that this information does indicate to a person of reasonable caution the probable presence of cocaine in the defendant's car, notwithstanding the questionable character of the substance the defendant initially gave to Tedesco. Viewed in this manner, the affidavit established probable cause for the issuance of a warrant to search the defendant's car for cocaine.

The trial court's order suppressing the defendant's statements and the evidence seized pursuant to the search warrant is vacated and the case is remanded for further proceedings.

---

6. The defendant argues that this averment in the affidavit was false because he never specifically referred to the substance in the bindle as cocaine, and, therefore, this statement should have been stricken from the warrant. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *People v. Dailey*, 639 P.2d 1068 (Colo.1982). However, the district court found that although the defendant did not mention cocaine on the night of his arrest, it was clear that he and Tedesco were discussing cocaine. Moreover, the affidavit stated that the defendant gave Tedesco the bindle. A common-sense interpretation of this information would be that the defendant was representing the contents of the bindle to be cocaine.