**The PEOPLE of the State of Colorado, Petitioner,**

v.

**The DISTRICT COURT OF EL PASO COUNTY, Colorado, and Honorable Matt Railey, one of the Judges thereof, Respondent.**

**No. 87SA493.**

Supreme Court of Colorado, En Banc.

Sept. 12, 1988.

---

Barney Iuppa, Dist. Atty., Robert M. Brown, Chief Deputy Dist. Atty., Colorado Springs, for petitioner.

Roland P. Zingale, Colorado Springs, for respondent.

H. Patrick Furman, Denver, for amicus curiae Colorado Criminal Defense Bar.

Hilary Holland, Westminster, for amicus curiae American Civ. Liberties Union.

David Miller, Denver, Staff Counsel for amicus curiae American Civ. Liberties Union.

ROVIRA, Justice.

In this original proceeding under C.A.R. 21, the People seek an order compelling the respondent district court to vacate its order dismissing criminal charges against Shawnda Whitted. We issued a rule to show cause and now make the rule absolute.

I.

On July 27, 1987, a grand jury sitting in El Paso County returned an indictment charging Whitted with one count of conspiracy to distribute a schedule II con-

trolled substance, and one count of distribution and sale of a schedule II controlled substance. § 12–22–310(1)(a)(V), 5 C.R.S. (1985), & § 18–18–105(1)(a), 8B C.R.S. (1987 Supp.). The charges against Whitted and more than twenty other persons arose from an investigation into a cocaine distribution network operating in and around Colorado Springs.

Whitted was taken before the court for her first appearance in August 1987, at which time she attested to her indigency and requested that the court appoint counsel to represent her. The state public defender's office was unable to accept appointment due to a conflict of interest, so the court appointed Roland Zingale, a private practitioner in Colorado Springs, to represent Whitted. *See* § 21–1–105, 8B C.R.S. (1986).

Approximately one month after accepting the appointment, Zingale filed a motion to withdraw[1] and a motion to dismiss the charges against Whitted based on what Zingale perceived were state law limitations on the total fee he could be paid for representing Whitted. Zingale argued first, that the representation he could provide Whitted within the confines of the compensation limits would be constitutionally ineffective, and second, that the limits violated Whitted's right to equal protection of the laws. The district court agreed with both arguments and ordered the charges dismissed.

The People argue in this original proceeding that the dismissal of the charges against Whitted on the basis of ineffective assistance of counsel was premature. We agree. In addition, we find that the district court erred in finding that the compensation limits deny Whitted equal protection of the laws.

## II.

In its 1987 appropriation to the public defender's conflict of interest account—from which court-appointed attorneys are paid—the General Assembly included the following footnote:

49. Judicial Department, Public Defender, Court Appointed Counsel, Conflict of Interest—This appropriation is based on the rates and maximum payment levels authorized by the Supreme Court and in effect on April 1, 1987. It is the intent of the General Assembly that these rates and maximums be strictly adhered to with the exception of felony trials subject to the provisions of Section 18–3–102, C.R.S.

Senate Bill 218, Ch. 1, sec. 2, 1987 Colo. Sess. Laws 4, 95 n. 49 (Long Bill).

The "rates and maximum payment levels authorized by the Supreme Court" is apparently a reference to the fee guidelines included among various regulations concerning the court appointment of counsel for indigents published by the chief justice. Office of the Chief Justice, Colorado Supreme Court, *Appointment of Attorneys to Represent Indigents*, Directive 85–24 (1985) (Directive 85–24). Directive 85–24 contains a schedule listing the hourly fees and total fee limits that may be paid a court-appointed attorney, but also provides for payment in excess of the scheduled fees in appropriate cases. The scheduled maximum total fee for the defense of a class 3 felony (with which Whitted was charged) is $2,000; the scheduled maximum total fee should the case be resolved without going to trial is $1,000.[2]

---

1. Zingale contended in his motion to withdraw that the fee limitations created a conflict of interest in his representation of Whitted because he would feel pressed—consciously or otherwise—to recommend a quick disposition of the charges so as to minimize his financial loss even if such a disposition was not in Whitted's best interests. The district court denied the motion to withdraw on the basis that, in light of Zingale's ethical obligations as an attorney, his pecuniary interests were subservient to Whitted's right to effective representation.

2. On August 31, 1987, David Vela, the state public defender, issued a memorandum to all chief judges informing them that, in light of his interpretation of footnote 49 to the Long Bill, his office would not make any payments to court-appointed attorneys for fees in excess of the maximum set out in Directive 85–24. "Instead," he wrote,

my office will maintain a record of the balance [in excess of the maximum] that is owing to each attorney. If at the end of the fiscal year money remains in that line item,

The district court's rulings, as explained below, were based on the belief that footnote 49 to the Long Bill proscribed the payment of fees in excess of the scheduled payments to court-appointed attorneys, notwithstanding Directive 85–24's express authorization of larger payments in appropriate cases.[3]

## A.

The respondent court concluded first that Whitted's right to effective assistance of counsel was violated by the fee limitation suggested in footnote 49 to the Long Bill.

An accused's right to the effective assistance of counsel is guaranteed by both the United States and Colorado Constitutions. U.S.Const. amend. VI & XIV; *Gideon v. Wainright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Colo.Const. art. II, § 16. The right encompasses adequate representation not only during trial, but at various other stages of a criminal prosecution as well. *See, e.g., Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (first appeal as of right); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (capital sentencing hearings); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (plea negotiations); *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (trial).

In order to justify relief based on the alleged ineffectiveness of his counsel, a defendant must demonstrate first, that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance," and second, that he suffered some prejudice due to his counsel's ineffectiveness, that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 690, 694, 104 S.Ct. at 2066, 2068. *Accord Banks v. People,* 696 P.2d 293, 298–99 (Colo.1985).

Although *Strickland* articulated the two-prong test in the context of a capital sentencing hearing, the same test is utilized to assess claims of ineffectiveness in other contexts as well. *See Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985) (in seeking to withdraw plea based on counsel's errors, defendant must show that "but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial"); *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068 ("[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt"); *People v. Walford,* 746 P.2d 945, 946 (Colo. 1987); *People v. Pozo,* 746 P.2d 523, 526–30 (Colo.1987); *People v. Oliver,* 745 P.2d 222,

---

the balance owing will be paid in the order that the documents were received by my office.

In addition, the public defender routinely denied requests for payments in excess of the fees listed in Directive 85–24, even when such fees were properly approved by the court in the manner specified by the directive. Attorneys who submitted the payment requests were informed that "no further payments can be made through this office," again in light of footnote 49, and that the public defender would "make every attempt during this fiscal year to obtain payment for the balance that is owing." Zingale received such a letter in another case at about the same time that he filed the motions to withdraw and to dismiss the charges against Whitted.

**3.** *The court did not discuss paragraph 3.C of Directive 85–24. The court was of the opinion that footnote 49 violated the separation of pow-*

ers doctrine to the extent that it purported to limit the judicial branch's power to determine the compensation due court-appointed attorneys. In addition, the court took judicial notice of contempt proceedings pending against the public defender for failing to pay court-approved fee awards to appointed counsel in excess of the scheduled fee limits. Notwithstanding its belief that footnote 49 could not validly impose fee limitations, the court based its decision on the assumption that footnote 49 had to be enforced until ruled invalid by this court.

The parties to this original proceeding, as well as amici American Civil Liberties Union of Colorado and the Colorado Criminal Defense Bar, agree—although for different reasons—that footnote 49 does not impose a valid limitation on compensation for court-appointed attorneys. In light of our disposition of this case, we find it unnecessary to address the validity or effect of footnote 49.

228–29 (Colo.1987); *Banks*, 696 P.2d at 298–99; *cf. Perez v. People*, 745 P.2d 650 (Colo.1987) (defendant whose sixth amendment rights are violated by prosecution's use of defense-retained expert during case-in-chief must demonstrate prejudice from such use to justify relief); *Hutchinson v. People*, 742 P.2d 875, 886 (Colo.1987) (same).

The respondent court did not apply the test announced in *Strickland* and adopted by this court in *Banks*, but instead reviewed the complexity of the case against Whitted and concluded that in light of footnote 49 to the Long Bill,

> a poor person has rights worth [$1,000] if we plea bargain the case or $2,000 if the case goes to trial. And I agree with Mr. Zingale that in this case that neither one of those amounts is adequate unless he makes a quick disposition in this case.

We note first that the court did not find that Zingale had committed any "acts or omissions ... outside the wide range of professionally competent assistance," but only that Zingale's representation might at some future time prove constitutionally deficient were the case to go to trial and were Zingale to attempt to defend Whitted while acting within the perceived constraints on his compensation. The first prong of the *Strickland* test invites no such speculation regarding unrealized deficiencies in performance, however, and the respondent's inquiry into that possibility, which was thus misdirected, was insufficient to support the necessary showing of substandard performance.

In addition, in applying the second prong of the *Strickland* test we find an even more compelling reason to reject the district court's conclusion: The respondent did not find, nor could it have found, that Whitted had been prejudiced by any deficient performance by counsel at the time the charges were dismissed. Whitted pleaded not guilty to the charges against her and had neither entered into a plea agreement nor been tried when the charges were dismissed. Even if Zingale's representation of Whitted to the time of the motions hearing had been woefully inadequate Whitted

suffered no immediate detriment thereby. The lesson of *Strickland* is clear: Substandard performance by defense counsel, standing alone, does not entitle the defendant to relief until that deficiency causes some harm to the defendant.

The district court's dismissal of the charges on the basis of a prospective denial of Whitted's right to effective assistance of counsel was premature because it is inconsistent with *Strickland*'s demand that an aggrieved defendant demonstrate actual substandard performance and prejudice resulting therefrom.

### B.

■ The district court also concluded that dismissal of the charges was necessary because the fee limitations under footnote 49 enable an indigent defendant represented by the public defender to receive more thorough representation than an indigent defendant represented by other court-appointed counsel.

■ The constitutional right to counsel is emphatically not the right to the best or most complete representation available. Instead, it is the right to the effective assistance of counsel. *Strickland*, 466 U.S. 668, 104 S.Ct. 2052. So long as an indigent defendant receives the effective assistance of counsel, she is not denied equal protection of the laws solely because other indigent defendants, or defendants who retain their own counsel, receive better representation.

As the Kansas Supreme Court explained in rejecting a similar equal protection argument:

> There has been no showing ... that any defendants have been *denied* effective assistance of counsel. There has been no showing of deficient performance or that deficient performance adversely affected the outcome of any trial. The Sixth Amendment guarantees only effective assistance of counsel; it does not guarantee the best counsel available. Therefore, even if the public defenders *are* better able to provide a defense (which is not definitely established), equal protec-

tion is not denied if the appointed attorneys provide *effective* assistance of counsel.

*State v. Smith,* 242 Kan. 336, 377, 747 P.2d 816, 846 (1987) (emphasis in original) (but finding other constitutional defects in Kansas's system of providing representation for indigent defendants). *Accord Ex parte Grayson,* 479 So.2d 76 (Ala.1985) (fee limitations do not per se violate indigent defendants' rights to equal protection of the laws); *State v. Silver,* 83 N.M. 1, 487 P.2d 910 (Ct.App.1971) (same).

As explained above, the district court's finding that Whitted was denied effective assistance of counsel was premature in the absence of any proof that Whitted had been prejudiced by some actual, substandard performance by counsel. The record does not support a finding that Whitted was denied equal protection of the laws on the basis that she was deprived of any right afforded other defendants. Absent such evidence, and absent evidence that the purported fee limitations inherently result in the denial of effective assistance of counsel to criminal defendants, we cannot say that the limitations violate defendants' equal protection rights.

Because Whitted was denied neither her right to effective assistance of counsel nor her right to equal protection of the laws, the respondent court erred in dismissing the charges against her. Accordingly, the rule to show cause is made absolute and the district court is directed to vacate its order dismissing the charges against Whitted.

ERICKSON, J., specially concurs.

ERICKSON, Justice, specially concurring:

The dismissal of the indictment in this case prior to trial on the grounds that court-appointed counsel for the indigent defendant would not be adequately compensated was, at best, courageous because, to the best of our knowledge, dismissal is not supported by precedent from any court in any jurisdiction. The trial court concluded, after reviewing defense motions, that the limitation on fees paid to court-appointed counsel would cause a denial of effective assistance of counsel and a denial of equal protection of the law that required dismissal of the criminal charges. As a result, the record which is before us is limited and contains only the hearing on the defense motions and the briefs and documents submitted in support of this original proceeding. I concur with the majority's conclusion that the sixth amendment issue of ineffective assistance of counsel has been raised prematurely and cannot be properly addressed in this original proceeding. I also agree with the majority's analysis of the equal protection issue. I specially concur because I believe that the ethical obligations of a lawyer to competently represent an indigent defendant after he accepted appointment is at issue. Defense counsel asserts that the limitation of legal fees that can be paid with public funds for the defense of an indigent accused will affect the quality of the legal services provided. I am shocked by a declaration that the quality of a lawyer's work depends upon the amount of the fee he is paid. I have always believed that every lawyer endeavors to provide the best representation that he can offer when he is either employed or accepts an appointment from the court, regardless of the fee involved.

C.R.C.P. 201.14 provides that no applicant for admission to the bar may be admitted until that person has taken the oath of admission prescribed by the supreme court. The oath requires compliance with the Code of Professional Responsibility and contains this pledge, "I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, nor will I delay any man's cause for greed or malice." Canon 2 of the Colorado Code of Professional Responsibility provides that a lawyer should assist the legal profession in fulfilling its duty to make legal counsel available. Ethical Consideration 2–25 declares that the need for legal services by those unable to pay reasonable fees has been met in part by lawyers who donated their services or accepted court appointments on behalf of such individuals.

For many years, lawyers who practiced in the federal courts accepted, as part of their obligation as officers of the court, appointments to defend the indigent without the payment of fees as officers of the court. Lawyers who are appointed to defend the indigent in our state courts have never been compensated as well as some lawyers in the private sector. Such service has been recognized by most lawyers as part of their pro bono publico duties that arise out of the legal profession's obligations to the court. *See* Rule 6.1–6.2, ABA Model Rules of Professional Conduct.

The New Jersey Supreme Court has set a standard for compensating court-appointed counsel that requires a comparison of compensation paid for comparable public service. Thus, the compensation of public defenders and district attorneys provides a guideline to measure the compensation which establishes the proper fee for the services of court-appointed counsel. The fee for court-appointed counsel under the New Jersey standard "should be somewhat more than a mere token or honorarium, but considerably less than full compensation were the accused able to pay." *State v. Loray*, 87 N.J.Super. 119, 208 A.2d 183 (1965), (quoting *State v. Horton*, 34 N.J. 518, 170 A.2d 1 (1961)).

The General Assembly has addressed the issue of fees for court-appointed lawyers by enacting section 21–1–105, 8B C.R.S. (1986), which provides:

**Appointment of other attorney in place of public defender.** For cause, the court may, on its own motion or upon the application of the state public defender or the indigent person, appoint an attorney other than the state public defender to represent the indigent person at any stage of the proceedings or on appeal. The attorney shall be awarded reasonable compensation and reimbursement for expenses necessarily incurred, to be fixed and paid by the court from state funds appropriated therefor.

In *Pena v. District Court*, 681 P.2d 953 (Colo.1984), we stated that we have "adopted the general rule that the judicial branch of government possesses the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities." *Pena v. District Court*, 681 P.2d at 956. One of our mandated responsibilities is to appoint attorneys to represent indigent defendants when the public defender, because of a conflict or other impediment, is unable to do so. *See* § 21–1–105, 8B C.R.S. (1986).

We recognized in *Bye v. District Court*, 701 P.2d 56 (Colo.1985), that an original proceeding is a proper method for reviewing an award of attorney's fees and addressed the Chief Justice Directives relating to the payment of fees. Since we decided *Bye*, a new Chief Justice Directive, Directive 85–24 (1985), was promulgated which established fees that meet the basis for court-appointed attorney's fees set out in *Loray*, 87 N.J.Super. 119, 208 A.2d 183. In my view, the appropriate time to review the sufficiency of the fee awarded is after the case is tried and not in an original proceeding before the trial is held. At this stage of the proceedings the value of the services rendered by appointed counsel cannot be determined.

Accordingly, since there has been no showing of ineffective assistance counsel or any demonstration of a denial of equal protection of the law, the rule to show cause should be made absolute.